Matthew N. Newman (AK Bar No. 1305023)
Megan R. Condon (AK Bar No. 1810096)
Grace R. Singh (AK Bar No. 2305059)
NATIVE AMERICAN RIGHTS FUND
745 West 4th Avenue, Suite 502
Anchorage, AK 99501
Phone: 907-276-0680
mnewman@narf.org
mcondon@narf.org
singh@narf.org

*Counsel for Craig Tribal Association and Organized Village of Kake*

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

    Plaintiff,

    v.

BRYAN NEWLAND, in his official capacity as Assistant Secretary, Indian Affairs, U.S. Department of the Interior; and U.S. DEPARTMENT OF THE INTERIOR,

    Defendants,

    and

CENTRAL COUNCIL OF THE TLINGIT & HAIDA INDIAN TRIBES OF ALASKA,

    Intervenor-Defendant.

Case No. 3:23-cv-00007-SLG

**CRAIG TRIBAL ASSOCIATION AND ORGANIZED VILLAGE OF KAKE'S AMICI CURIAE BRIEF IN SUPPRT OF INTERVENOR-DEFENDANT TLINGIT & HAIDA'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTEREST OF AMICI CURIAE ..................................................................... 1

INTRODUCTION ........................................................................................... 2

ARGUMENT.................................................................................................... 4

    I.  The Secretary Has Clear Authority to Acquire Land in Trust for Alaska
        Native Tribes and Individuals. ................................................................ 4

        A.  Nothing in ANCSA Reflects an Intent to Repeal the Secretary's
             Authority to Consider Trust Land Acquisitions Under Section 1 of the
             Alaska IRA.................................................................................... 4

        B.  ANCSA's Declaration of Purpose and Settlement Framework Do Not
             Contradict the Secretary's Discretionary Authority to Acquire Trust
             Land in Alaska. ............................................................................. 7

        C.  ANCSA's Extinguishment of Aboriginal Title and Claims Does Not
             Contradict the Secretary's Discretionary Authority to Acquire Trust
             Land in Alaska. ........................................................................... 11

            1. A petition to acquire lands in trust is not a claim. ....................... 11

            2. ANCSA's legislative history distinguishes between claims of Native
            use and occupancy and statutes providing mechanisms for Alaska
            Natives to acquire recognized title.................................................. 12

            3. Those elements of aboriginal title Congress extinguished in ANCSA
            will not be restored by Secretarial action to acquire lands in trust in
            Alaska . ....................................................................................... 14

    II.  Existing Trust Lands in Alaska Illustrate that ANCSA and the Secretary's
        Discretionary Land-into-Trust Authority Can Co-Exist.. ....................... 17

    CONCLUSION ......................................................................................... 19

Amici Curiae Brief in Support of Intervenor-Defendant's            i
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 2 of 25

# TABLE OF AUTHORITIES

**Cases**

*Akiachak Native Community v. Salazar,*
    935 F.Supp. 2d 195 (D.D.C. 2013) ............................................................ 8, 10, 11

*Akiachak Native Community v. U.S. Dep't of Interior,*
    827 F.3d 100 (D.C. Cir. 2016) .................................................................. 9

*Bryan v. Itasca County,*
    426 U.S. 373 (1976) ................................................................................ 6

*Connecticut ex rel. Blumenthal v. U.S. Dep't of Interior,*
    228 F.3d 82 (2d Cir. 2000) ...................................................................... 6

*Connecticut Nat. Bank v. Germain,*
    503 U.S. 249 (1992) ................................................................................ 16

*Floyd v. American Honda Motor Co.,*
    966 F.3d 1027 (9th Cir. 2020) ................................................................ 2

*Hartford Underwriters Ins. Co. v. Union Planters Bank,*
    530 U.S. 1 (2000) .................................................................................... 16

*Johnson v. McIntosh,*
    21 U.S. 543, 588-91 (1823) .................................................................... 14

*Mescalero Apache Tribe v. Jones,*
    411 U.S. 145 (1973) ................................................................................ 9

*Morton v. Mancari,*
    417 U.S. 535 (1974) ................................................................................ 9

*People of South Naknek v. Bristol Bay Borough,*
    466 F. Supp. 870 (D. Alaska 1979) ........................................................ 11

*Tee-Hit-Ton Indians v. United States,*
    348 U.S. 272 (1955). .............................................................................. 14, 15

*United States v. Creek Nation,*
    295 U.S. 103 (1935). .............................................................................. 15

**Statutes**

Amici Curiae Brief in Support of Intervenor-Defendant's       ii
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 3 of 25

25 U.S.C. § 1602 ............................................................................................. 8

25 U.S.C. § 1901 ............................................................................................. 8

25 U.S.C. § 5108 ............................................................................................. 2

25 U.S.C. § 5119 ...................................................................................... 2, 4, 10

25 U.S.C. § 5301 ............................................................................................. 8

43 U.S.C. § 1601 ............................................................................................. 7

43 U.S.C. § 1603 ........................................................................................... 12

43 U.S.C. § 1617 ............................................................................................. 7

Act of August 13, 1954, Pub. L. No. 587, §§ 8, 19, 68 Stat. 722 ..................... 5

Act of August 13, 1954, Pub. L. No. 588, § 1, 68 Stat. 724 ............................. 5

Act of August 23, 1954, Pub. L. No. 627, § 2, 68 Stat. 769 ............................. 5

Act of September 1, 1954, Pub. L. No. 762, §§ 17, 18, 68 Stat. 1103 .............. 5

Act of September 5, 1962, Pub. L. No. 87-630, § 10, 76 Stat. 431 ................... 5

Act of October 20, 1978, Pub. L. No. 95-487, 92 Stat. 1635 ......................... 10

Alaska Stat. § 01.15.100 ................................................................................ 1

Federal Land Policy and Management Act,
    Pub. L. No. 94-579, 90 Stat. 2743 ........................................................... 7

Maine Indian Claims Settlement Act,
    Pub. L. No. 96-420, § 5(e), 94 Stat. 1785, 1791 ..................................... 5

**Repealed Statutes**

25 U.S.C. § 791 .............................................................................................. 5

25 U.S.C. § 803 .............................................................................................. 5

25 U.S.C. § 804 .............................................................................................. 5

25 U.S.C. § 821 .............................................................................................. 5

25 U.S.C. § 841 .............................................................................................. 5

Amici Curiae Brief in Support of Intervenor-Defendant's
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

iii

25 U.S.C. § 891 ................................................................................................... 5

25 U.S.C. § 935 ................................................................................................... 5

**Other**

DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS
(3rd ed. 2012) ........................................................................................ 9, 10, 12

Exec. Order No. 13175, 65 Fed. Reg. 67,249 (Nov. 6, 2000).............................. 8

Indian Entities Recognized by and Eligible To Receive Services From the United States
Bureau of Indian Affairs, 88 Fed. Reg. 2,112, (Jan. 12, 2023) ............................... 1

Land Acquisitions; Craig Tribal Association, Craig, Alaska, 82 Fed. Reg. 4,915
(Jan. 17, 2017) ...................................................................................................... 1

Land Acquisition in the State of Alaska, 79 Fed. Reg. 76,888 (Dec. 23, 2014) ........... 8, 17

Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-
Nation Relationships (Jan. 26, 2021) ...................................................... 8

Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native
Villages Over Land and Nonmembers (Jan. 11, 1993) ..................................... 1, 10

S. REP. NO. 92-405 (1971)................................................................... 10, 12, 13

S. REP. NO. 92-581 (1971)............................................................................ 13

WILLIAM C. CANBY, JR., AMERICAN INDIAN LAW IN A NUTSHELL (5th ed. 2009) ... *passim*

25 C.F.R. § 151.10.................................................................................. 17

25 C.F.R. § 151.11.................................................................................. 17

Amici Curiae Brief in Support of Intervenor-Defendant's                                iv
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 5 of 25

## INTEREST OF AMICI CURIAE

The Amici Curiae, Craig Tribal Association and Organized Village of Kake (Amici), are federally[1] and state-recognized[2] Tribes with existing trust lands. In 1950, the United States acquired 15.9 acres of land in trust for the Organized Village of Kake to support the Tribe's cannery.[3] The Organized Village of Kake continues to utilize these trust lands to promote the health and well-being of its Tribal citizens. Trust lands currently house the Organized Village of Kake's Tribal court, which uses culturally relevant services based on Tlingit traditions to address Tribal citizens' public safety needs.[4]

In 2017, the United States acquired 1.08 acres of land in trust for the Craig Tribal Association.[5] These lands were taken into trust to enhance Craig Tribal Association's economic sovereignty and generate funds to provide services, including food security programs, scholarships, and medical travel.[6] The trust land parcel is also used for Tribal government offices and culture uses, providing traditional services to Tribal citizens, such as name giving and adoptions.[7]

---

[1] Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 88 Fed. Reg. 2,112, 2,115–16 (Jan. 12, 2023).

[2] Alaska Stat. § 01.15.100.

[3] Jackson Decl. ¶ 5; Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, 112 n.277 (Jan. 11, 1993).

[4] Jackson Decl. ¶¶ 14–15.

[5] Land Acquisitions; Craig Tribal Association, Craig, Alaska, 82 Fed. Reg. 4,915 (Jan. 17, 2017).

[6] Cook Decl. ¶ 7.

[7] Cook Decl. ¶ 6.

Amici Curiae Brief in Support of Intervenor-Defendant's
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

1

Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 6 of 25

The Amici's existing trust lands put them in a unique position to understand the benefits of trust lands and the dire consequences that would result from the relief that the State of Alaska is seeking in this case—namely prohibiting the United States from even considering trust land petitions from Alaska Native Tribes. As such, the Amici are uniquely interested in ensuring the continued availability of the land-into-trust process for Alaska Native Tribes and individuals throughout the state.

All parties have consented to the filing of Amici's brief[8] in support of Intervenor-Defendant the Central Council of the Tlingit and Haida Indian Tribes' (Tlingit & Haida) Cross Motion for Summary Judgment.[9]

## INTRODUCTION

The State cannot meet the extraordinarily high burden it carries to demonstrate that Congress intended the Alaska Native Claims Settlement Act (ANCSA) to repeal or revoke the Secretary of the Interior's authority to acquire land in trust in Alaska pursuant to the 1934 Indian Reorganization Act (IRA)[10] and 1936 Alaska Indian Reorganization Act (Alaska IRA).[11] There is no "clear and manifest" congressional intent to repeal these earlier enactments, nor do the statutes "present an irreconcilable conflict."[12] Comparing ANCSA to prior and subsequent enactments demonstrates that Congress knows well how

---

[8] State of Alaska's Unopposed Mot. to Modify the Briefing Schedule 2, ECF 20.
[9] ECF 21.
[10] 25 U.S.C. § 5108.
[11] 25 U.S.C. § 5119.
[12] *Floyd v. American Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020).

Amici Curiae Brief in Support of Intervenor-Defendant's                    2
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 7 of 25

to address—and even forbid—the Secretary's ability to acquire land in trust. Further, Congress's express repeals in ANCSA and the Federal Land Policy and Management Act (FLPMA) of certain legislation concerning Native lands, including the repeal of a provision in the Alaska IRA, shows conclusively that Congress went only so far in ANCSA and no further. Congress's decision to leave intact the controlling provisions at issue here— Section 5 of the IRA and Section 1 of the 1936 Alaska IRA—must be given effect.

ANCSA's findings cannot be stretched to effectuate a revocation of prior law. Congress's statement that the 1971 land claims settlement should not create a trusteeship is perfectly reconcilable with Congress leaving in place continuing federal trust responsibilities and programs grounded in other federal law—as Congress plainly intended to do.

Additionally, ANCSA section 1603(c)'s extinguishment of aboriginal title and claims cannot be stretched to repeal the Secretary's authority under the IRA to acquire trust lands in Alaska. First, Congress extinguished only "claims" to land, and a request that the Secretary exercise her discretionary authority to acquire tribally owned fee land in trust is not a claim in any reasonable sense of that word. Second, section 1603(c)'s legislative history shows Congress was well aware of the difference between claims of aboriginal right and title—which Congress intended to extinguish in ANCSA—and statutes leading to the acquisition of recognized title, which Congress intended to leave in place. Third, the State's theory that the acquisition of lands in trust would restore aboriginal title to such

Amici Curiae Brief in Support of Intervenor-Defendant's                    3
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 8 of 25

lands, thereby unraveling ANCSA, reflects a fundamental misunderstanding of aboriginal versus recognized title.

## ARGUMENT

## I.    The Secretary Has Clear Authority to Acquire Land in Trust for Alaska Native Tribes and Individuals.

From the beginning, the State's arguments obfuscate the issue presented, attempting to reframe it using the major questions doctrine and its own preferred reading of ANCSA's statutory language and legislative history.[13]  But the State's effort cannot avoid the ultimate issue in this case: whether Congress repealed Section 1 of the Alaska IRA,[14] authorizing the Secretary to acquire land in trust in Alaska.  The State makes no argument that ANCSA or any post-ANCSA enactments repealed Section 1 of the Alaska IRA and its attempt to use the major questions doctrine to avoid its heavy burden should be rejected.[15]

### A. Nothing in ANCSA Reflects an Intent to Repeal the Secretary's Authority to Consider Trust Land Acquisitions Under Section 1 of the Alaska IRA.

There is no term in ANCSA whose plain meaning can produce the result the State seeks.  That Congress did not intend for ANCSA to repeal the Secretary's authority to acquire trust lands in Alaska is perhaps best demonstrated by comparison to congressional actions, both pre- and post-ANCSA, showing Congress's ability to clearly express its intent when ending Tribes' eligibility for federal programs and services.  For instance, when

---

[13] State of Alaska's Mot. for Summ. J. and Mem. in Supp., ECF 16 at 39–41.

[14] 25 U.S.C. § 5119.

[15] *See generally* ECF 16 at 45–49 (arguing that post-ANCSA the "Secretary does not have clear congressional authority" to acquire lands in trust in Alaska).

Amici Curiae Brief in Support of Intervenor-Defendant's                                    4
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

Congress enacted legislation terminating its trust responsibilities with certain Oregon Tribes in 1968, three years before ANCSA, it made its legislative intentions perfectly clear:

> The purpose of this Act is to provide for the termination of Federal supervision over the trust and restricted property of certain tribes and bands of Indians located in western Oregon and the individual members thereof . . . and for a termination of Federal services furnished such Indians because of their status as Indians.[16]

Similarly in 1954, Congress spoke unambiguously when it chose to eliminate all trust lands and trust status for certain Texas Tribes:

> Upon the conveyance to the State of Texas of the lands held in trust by the United States for the Alabama and Coushatta Tribes of Texas, the Secretary of the Interior shall publish in the Federal register a proclamation declaring that the Federal trust relationship to such tribe and its members has terminated. Thereafter, such tribe and its members shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians.[17]

Post-ANCSA land claims statutes, too, show that Congress is fully capable of clearly addressing future trust land acquisitions when that is Congress's intent. For instance, the 1980 Maine Indian Claims Settlement Act specifically stated that "the United States shall have no other authority to acquire lands or natural resources in trust for the benefit of Indians or Indian nations, or tribes, or bands of Indians in the State of Maine."[18]

---

[16] Act of August 13, 1954, Pub. L. No. 588, § 1, 68 Stat. 724.

[17] Act of August 23, 1954, Pub. L. No. 627, § 2, 68 Stat. 769; s*ee also* Act of August 13, 1954, Pub. L. No. 587, §§ 8, 19, 68 Stat. 722–23 (Klamath Indians); Act of September 1, 1954, Pub. L. No. 762, §§ 17, 18, 68 Stat. 1103–1104 (Paiute Indians); Act of September 5, 1962, Pub. L. No. 87-630, § 10, 76 Stat. 431 (Ponca Tribe); 25 U.S.C. §§ 791, 803-804 (Wyandotte Tribe) (repealed 1978); 25 U.S.C. § 821 (Peoria Tribe) (repealed 1978); 25 U.S.C. § 841 (Ottawa Tribe) (repealed 1978); 25 U.S.C. § 891 (Menominee Tribe) (repealed 1973); 25 U.S.C. § 935 (Catawba Tribe) (repealed 1993).

[18] Pub. L. No. 96-420, § 5(e), 94 Stat. 1785, 1791.

Amici Curiae Brief in Support of Intervenor-Defendant's                    5
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 10 of 25

When similar language was excluded from the Mashantucket Pequot Tribe's lands claims settlement in Connecticut, the Second Circuit gave full effect to Congress's different choice:

> We have compared both statutes and find in the Maine Settlement Act an obvious demonstration that Congress knew how to prohibit the Secretary from taking into trust any lands outside of specifically designated settlement lands. The absence of an analogous provision in the Settlement Act at issue in this case confirms that the Settlement Act was not meant to eliminate the Secretary's power under the IRA to take land purchased without settlement funds into trust for the benefit of the Tribe.[19]

The absence of any language in ANCSA repealing the Secretary's land-into-trust authority in Alaska compels a parallel conclusion here.

As these examples show, Congress knows full well how to legislate when it wishes to remove Secretarial authority to take lands into trust. Its election not to do so in ANCSA must be respected.[20] Honoring Congress's decision in ANCSA to leave in place the Secretary's land-into-trust authority in Alaska is further compelled when compared to Congress's deliberate repeal of other measures, including the Alaska Native Allotment Act,

---

[19] *Connecticut ex rel. Blumenthal v. U.S. Dep't of Interior*, 228 F.3d 82, 90 (2d Cir. 2000).

[20] *See Bryan v. Itasca County*, 426 U.S. 373, 389 (1976) (express language of Indian termination acts was "cogent proof that Congress knew well how to express its intent directly when that intent was to subject reservation Indians to the full sweep of state laws and state taxation").

Amici Curiae Brief in Support of Intervenor-Defendant's                                    6
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 11 of 25

the Alaska Native Townsite Act, and the Secretary's authority to establish reservations in Alaska.[21]

### B. ANCSA's Declaration of Purpose and Settlement Framework Do Not Contradict the Secretary's Discretionary Authority to Acquire Trust Land in Alaska.

The State asserts that ANCSA "did not envision creation of any new trust land or other special status land in the state" because the congressional findings establish Congress's intent to settle aboriginal land claims, "without establishing any permanent racially defined institutions, rights, privileges, or obligations [and] *without creating a reservation system or length wardship or trusteeship*."[22]

But this is not what ANCSA says. The relevant ANCSA provision says that "*the settlement* should be accomplished . . . without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges."[23] The operative term is "the settlement." It is *the settlement* which is not to establish a lengthy trusteeship. Nothing in the statutory language speaks to other sources of trust-like relationships, such as the general trust relationship that exists between Alaska's federally recognized Tribes and the federal

---

[21] 43 U.S.C. § 1617(a) (repealing the Alaska Native Allotment Act); Federal Land Policy and Management Act of 1976, Pub. L. 94-579, §§ 703(a), 704(a), 90 Stat. 2743, 2790, 2792 (repealing the Alaska Native Townsite Act and Section 2 of the Alaska IRA).
[22] ECF 16 at 26–28 (alteration and emphasis in original).
[23] 43 U.S.C. § 1601(b) (*emphasis added*).

Amici Curiae Brief in Support of Intervenor-Defendant's        7
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG   Document 23   Filed 10/23/23   Page 12 of 25

government,[24] nor the trust relationship that is addressed under other federal laws—*besides* ANCSA—such as the Alaska IRA. The quoted provision by its very terms speaks to ANCSA and ANCSA alone—not the IRA nor the numerous other statutes which reflect a continuing and active trust relationship between the United States and Alaska Native Tribes and individuals.[25]

The State argues more broadly that ANCSA's "comprehensive" settlement "left no room for the Secretary's lands-into-trust authority."[26] The State tested this argument before in *Akiachak Native Community v. Salazar*, where the district court was unpersuaded, reasoning that land claims may be settled without removing the Secretary's discretion to take tribally owned fee lands into trust, and "the fact that the settlement would not create a trusteeship does not necessarily mean that it prohibits the creation of any trusteeship *outside* of the settlement."[27]

---

[24] Exec. Order No. 13175, 65 Fed. Reg. 67,249 (Nov. 6, 2000) (acknowledging the federal government's "trust relationship with Indian tribes"); Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships (Jan. 26, 2021) (acknowledging that the United States maintains "trust responsibilities to Tribal Nations"); *see also* Land Acquisition in the State of Alaska, 79 Fed. Reg. 76,888, 76,891 (Dec. 23, 2014) (explaining that the "Secretary's authority to acquire lands in trust for Indian tribes and individual Indians can be critical to carrying out the Federal trust responsibility").

[25] 25 U.S.C. § 1602 (Indian Health Care Improvement Act); 25 U.S.C. § 1901 (Indian Child Welfare Act); 25 U.S.C. § 5301 (Indian Self-Determination and Education Assistance Act).

[26] ECF 16 at 46–47.

[27] 935 F.Supp. 2d 195, 207 (D.D.C. 2013) (emphasis added). After the district court held that the Alaska exception in the Department of Interior's land-into-trust regulations was unlawful, the Department initially appealed. Ultimately, the Department decided to revise

Amici Curiae Brief in Support of Intervenor-Defendant's                                    8
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 13 of 25

Whereas ANCSA was focused on settling aboriginal land claims, the IRA was focused on reviving tribal governments. In this regard, the IRA has been described as "one of the most significant pieces of Indian legislation ever enacted by Congress."[28] It ushered in a sweeping change in Indian policy, away from the failed policy of assimilation and federal repression, toward one that supported tribal land acquisition and facilitated Tribes in restoring effective structures for self-government.[29] The "intent and purpose of the [IRA] . . . was 'to rehabilitate the Indian's economic life and to give him a chance to develop the initiative destroyed by a century of oppression and paternalism,'" and thus "disentangle the tribes from the official bureaucracy."[30] Among other things, the IRA permitted the Secretary to acquire new lands in trust, provided economic development loans, and provided an optional path to reorganizing tribal government institutions.[31] "The over-riding purpose of [the IRA] was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically."[32]

---

its regulations to remove the Alaska exception and dismissed its appeal. *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 104–105 (D.C. Cir. 2016). The D.C. Circuit dismissed the State's appeal as moot and vacated the district court's decision without reaching the merits. *Id.* at 113, 115.

[28] DAVID S. CASE & DAVID A. VOLUCK, ALASKA NATIVES AND AMERICAN LAWS 28 (3rd ed. 2012).

[29] WILLIAM S. CANBY, AMERICAN INDIAN LAW IN A NUTSHELL 25–26 (5th ed. 2009).

[30] *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 152–53 (1973) (internal citation omitted).

[31] CANBY at 25–26; CASE & VOLUCK at 28–29.

[32] *Morton v. Mancari*, 417 U.S. 535, 542 (1974).

Amici Curiae Brief in Support of Intervenor-Defendant's                    9
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 14 of 25

Since the original 1934 IRA did not fully apply to Alaska, Congress enacted the 1936 Alaska IRA applying most of its key provisions to Alaska Native Tribes on the same footing as other Native American Tribes.[33] By 1950, "over 80 villages" had petitions pending with the Secretary "in which they asked that reserves be established for them under the [IRA]."[34] The Secretary ultimately established six IRA reservations in Alaska, all of which ANCSA later expressly repealed.[35] In addition, the Secretary took properties in Southeast Alaska into trust during the 1940s and 1950s, none of which ANCSA repealed.[36] These properties included a 15.9-acre parcel acquired in trust for Amicus Curiae, the Organized Village of Kake.[37] In 1978, after enactment of ANCSA, Congress recognized the continued existence of the Tribe's trust lands in a law intended to provide a means for the village corporation to acquire a 1.09-acre portion of the trust land parcel.[38]

That Congress permitted these IRA trust lands to remain in existence after ANCSA utterly defeats the State's contention that the two statutory regimes—one focused on tribal trust land for governance and economic development, the other focused on corporate fee land as part of a land claims settlement—cannot coexist. This conclusion is further

---

[33] 25 U.S.C. § 5119.

[34] S. Rep. No. 92-405, at 93 (1971).

[35] Case & Voluck at 106 n.142.

[36] *Akiachak*, 935 F. Supp. 2d at 207 n.7; Solicitor's Opinion M-36975 at 112 n.277.

[37] Jackson Decl. ¶ 5; Solicitor's Opinion M-36975 at 112 n.277.

[38] Jackson Decl. ¶ 6; Act of October 20, 1978, Pub. L. No. 95-487, 92 Stat. 1635 (authorizing the Secretary, upon request from the Organized Village of Kake, to convey a segment of the trust parcel to the Tribe in fee simple so it could in turn be conveyed to the village corporation).

Amici Curiae Brief in Support of Intervenor-Defendant's                    10
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 15 of 25

supported by the fact that ANCSA left in place the federal government's land-related fiduciary obligations over the thousands of restricted fee Native allotments and restricted townsite lots in Alaska.[39]

### C. ANCSA's Extinguishment of Aboriginal Title and Claims Does Not Contradict the Secretary's Discretionary Authority to Acquire Trust Land in Alaska.

The State further argues that the Secretary's authority to acquire trust lands in Alaska did not survive ANCSA's extinguishment of aboriginal title and claims based on that title.[40] But ANCSA's claims extinguishment provision is just that—an extinguishment of *land claims*—and a trust land petition is not a "claim." ANCSA's claims extinguishment provision does not limit the choices available to Alaska Tribes regarding their fee lands, and certainly does not limit the Secretary's statutory authority to acquire such lands in trust pursuant to existing law.

### 1. A petition to acquire lands in trust is not a claim.

"[A] 'claim' is necessarily an assertion of right."[41] In contrast, a petition for trust land acquisition asserts no right at all. It is merely a request that the Secretary exercise her discretion to grant or deny the petition. When it comes to "claims," section 1603(c) of ANCSA is perfectly clear: it addresses "claims" based on aboriginal "use and occupancy,"

---

[39] *Cf. People of South Naknek v. Bristol Bay Borough*, 466 F. Supp. 870, 875 (D. Alaska 1979) (holding that Alaska Native Allotments and Townsite lots continued to enjoy federal protections after ANCSA's enactment).

[40] ECF 16 at 46–47.

[41] *Akiachak*, 935 F. Supp. 2d at 205.

Amici Curiae Brief in Support of Intervenor-Defendant's                              11
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

and not just any imaginable claim or request relating to land.[42]  The primary purpose of

ANCSA was to extinguish aboriginal claims of use and occupancy, and to extinguish then-

pending litigation over such claims, so that land titles in Alaska would be forever settled.[43]

That very targeted purpose has nothing to do with the manner in which lands are held,

much less with the Secretary's authority to acquire lands in trust for the benefit of Alaska

Tribes.

### 2. ANCSA's legislative history distinguishes between claims of Native use and occupancy and statutes providing mechanisms for Alaska Natives to acquire recognized title.

A careful review of ANCSA's legislative history shows that Congress was fully

aware of the reach of its actions.  The Senate Committee on Interior and Insular Affairs'

Report (Senate Report) distinguishes between: (1) statutes that relate to Native use and

occupancy, and (2) statutes that provide mechanisms for Alaska Natives to acquire

recognized title.  With respect to the first category, the Senate Report noted "the common

legal thread which runs through the diversity indicated above [the bewildering diversity

among the claims and claimants] is the assertion of rights or claims based upon *aboriginal*

*use or occupancy*."[44]  Here, the Senate Report cites examples of congressional enactments

designed to protect existing Alaska aboriginal Native use and occupancy from intrusion.[45]

In enacting these laws, Congress "intended in each instance that the *status quo* be

---

[42] 43 U.S.C. § 1603(c).
[43] CASE & VOLUCK at 75, 167.
[44] S. REP. NO. 92-405 at 75.
[45] *Id*.

Amici Curiae Brief in Support of Intervenor-Defendant's                                    12
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 17 of 25

maintained with respect to Native use, occupancy, and title until Congress should act upon these questions," but "refused in each instance to determine substantively what lands were in fact used or occupied by the Natives, or what was the nature of the title that the Natives held by virtue of that use or occupancy."[46]

With respect to the second category—leading to the acquisition of recognized title—the Senate Report lists various other statutes, starting in 1906, by which Congress provided mechanisms for Alaska Natives to acquire complete title, including the Alaska Native Allotment Act,[47] the Alaska Native Townsite Act,[48] and the IRA "the terms of which were extended to Alaska in 1936."[49] The Senate Report makes abundantly clear that, while Congress was providing for "the full and final extinguishment of any and all claims based on aboriginal right . . . [r]emaining in effect and unextinguished by this Act are all claims which are based upon grounds other than the loss of original Indian title land."[50]

ANCSA's legislative history thus confirms that Congress never regarded the IRA as falling within the category of statutes "relating to Native use and occupancy" that were being extinguished under section 1603(c). Because section 1603(c) did not deal with enactments like the IRA concerning "recognized title," it left those measures untouched.

---

[46] *Id.*

[47] *Id.* at 90–91.

[48] *Id.* at 91.

[49] *Id.*

[50] *Id.* at 110. The Conference Report adopted "in substance" the same language as the Senate amendment. S. REP. NO. 92-581, at 40 (1971).

Amici Curiae Brief in Support of Intervenor-Defendant's
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

13

Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 18 of 25

### 3. Those elements of aboriginal title Congress extinguished in ANCSA will not be restored by Secretarial action to acquire lands in trust in Alaska.

The State's last argument relating to ANCSA's extinguishment of aboriginal claims is the mistaken assertion that if the Secretary acquires land in trust for Tribes in Alaska, the Secretary would be claiming, "the authority to resurrect what Congress extinguished— aboriginal title."[51] The State's buttresses its argument on the fact that the Secretary took land into trust on behalf of Tlingit & Haida to restore the Tribe's traditional homelands, asserting that "[w]hatever the Assistant Secretary's test is for determining 'traditional homeland' (he does not say), it likely looks like the test for determining aboriginal title."[52] The State's assertion reflects a fundamental misunderstanding of federal Indian law: the acquisition of tribal land in trust does not resurrect the land's aboriginal title.

There is a fundamental distinction between aboriginal title and recognized title. Aboriginal title describes a Tribe's right to occupy certain land. It is not a property right. It "amounts to a right of occupancy which the sovereign grants and protects against intrusion by third parties."[53] The right stems from the legal theory that discovery and conquest by European nations gave the conquerors the right to own the land, but not to disturb a Tribe's right to occupy it.[54] The "right of occupancy" later came to be known as "original Indian title" or, more commonly today, "aboriginal title."[55] A taking by the

---

[51] ECF 16 at 43.
[52] ECF 16 at 44.
[53] *Tee-Hit-Ton Indians v. United States*, 348 U.S. 272, 279 (1955).
[54] *See Johnson v. McIntosh*, 21 U.S. 543, 588-91 (1823).
[55] CANBY at 411.

Amici Curiae Brief in Support of Intervenor-Defendant's                                    14
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 19 of 25

federal government of lands held by aboriginal title, usually referred to as an "extinguishment" of aboriginal title, does not give rise to any right of compensation under the Fifth Amendment.[56]  In this important respect aboriginal title is to be distinguished from "recognized title."[57]

"Recognized title," on the other hand, "is title to Indian land that has been recognized by federal treaty or statute."[58]  For example, the United States may by treaty "recognize" aboriginal title "by describing a particular land area as being reserved to the tribe."[59]  But, such a parcel "may or may not have been part of the aboriginal territory of the tribe."[60]  As noted earlier, there are also many statutory means by which Tribes can acquire recognized title.[61]  Recognized title is "property" within the meaning of the Fifth Amendment, so that its taking by the federal government gives rise to the duty to pay just compensation.[62]

The State misunderstands Congress's broad authority over Indian affairs, including both (1) the power to extinguish aboriginal title *and* (2) the power to establish recognized title by taking lands into trust on behalf of a Tribe.  The two concepts are entirely different, and often the two land areas are entirely different as well.  Indeed, typically the President

---

[56] *Tee-Hit-Ton Indians*, 348 U.S. at 279.
[57] *Id.* at 281; CANBY at 412, 420–21.
[58] CANBY at 420; *Tee-Hit-Ton Indians*, 348 U.S. at 277–78.
[59] CANBY at 420.
[60] *Id*.
[61] *See supra* notes 47–49.
[62] *United States v. Creek Nation*, 295 U.S. 103, 110–11 (1935).

Amici Curiae Brief in Support of Intervenor-Defendant's                    15
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

or Congress brokered treaties or enacted statutes which extinguished tribal claims of use and occupancy over certain lands, while conveying to the Tribes recognized title to other lands elsewhere, to be held in trust status.[63] Too commonly, the recognized lands reserved to the Tribes were far from the lands the Tribes originally possessed and occupied under aboriginal title.[64]

In sum, the Secretary's acquisition of trust land in Alaska would not resurrect any aboriginal titles extinguished by ANCSA, and trust lands cannot undo ANCSA's settlement, as the State mistakenly suggests.[65] Congress never envisioned ANCSA as the only means left for Alaska Natives to secure land. Title to allotments and townsite lots, together with existing trust land parcels, and new trust land acquisitions were all left in place by a Congress that well knew the difference between settling aboriginal land claims and forever foreclosing all other land acquisitions under alternative federal laws. The State would take Congress's measured settlement legislation far beyond what the statutory terms can reasonably bear—falling far short of its heavy burden to establish a revocation of prior legislation. It remains this Court's role to say what the law is, not what the State believes the law should be.[66]

---

[63] CANBY at 19–20, 420.

[64] *Id*.

[65] ECF 16 at 43.

[66] *See Hartford Underwriters Ins. Co. v. Union Planters Bank, NA*, 530 U.S. 1, 6 (2000) ("[W]e begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'") (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

Amici Curiae Brief in Support of Intervenor-Defendant's                                16
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 21 of 25

## II. Existing Trust Lands in Alaska Illustrate that ANCSA and the Secretary's Discretionary Land-into-Trust Authority Can Co-Exist.

The current reality of trust lands in Alaska stands in stark contrast to the State's assertions about the disruptive jurisdictional impacts.[67]  Rather, lands held in trust for Amici demonstrate the fundamental importance of trust land acquisitions and deafeat the State's asserted narrative.

In Kake, Alaska, public safety is the "Tribe's highest priority."[68]  Kake is the most remote community in Southeast Alaska for purposes of travel between the region's two largest hub communities and is only accessible by boat, ferry, or small plane.[69]  These distances limit the ability of the Alaksa State Troopers to respond to Kake's public safety needs and there have been multiple instances when it has taken Troopers days to respond to violent crimes in the community.[70]  The President of the Organized Village of Kake, Joel Jackson, stated that the Tribe  utilizes its trust lands to respond to these public safety challenges and provide essential services to its Tribal citizens.[71]  For example, the Tribal

---

[67] *See* ECF 16 at 44–45. The State's arguments are further belied by the requirement in the land-into-trust regulations that the Secretary consider "jurisdictional problems" when evaluating a trust petition. 25 C.F.R. §§ 151.10(f), 151.11(a).

[68] Jackson Decl. ¶ 10.

[69] Jackson Decl. ¶ 4.

[70] Jackson Decl. ¶ 10.

[71] Jackson Decl. ¶¶ 12–15*; see also* 79 Fed. Reg. at 76,889 (discussing the "urgent policy recommendations" that spurred the Department of Interior's reexamination of the legal basis for the Secretary's discretionary land-into-trust authority in Alaska, including the Indian Law and Order Commission's recommendation to allow Tribes' fee lands to be placed in trust to address "the shocking and dire state of public safety in Alaska Native communities").

Amici Curiae Brief in Support of Intervenor-Defendant's
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

17

Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 22 of 25

Court is housed on trust lands and practices traditional peace healing circles based on Tlingit traditional values and restorative justice.[72]  Under the Tribal Court's Circle Peacemaking Program, community members monitor the final agreement.[73]  This allows the community to monitor itself, an important component to addressing public safety in rural Alaska.[74]  The Organized Village of Kake's trust lands also house a tribally owned lodge and the Tribe exercises its sovereign authority to assess taxes on the lodge for income to supplement tribal programing, including food security services.[75]

The Criag Tribal Association's post-ANCSA trust land acquisition provides another example of what trust lands look like in Alaska. The Tribe continues to use the trust land parcel for Tribal government offices and cultural use.[76]  The Tribe's cultural department uses the space to provide traditional services to Tribal citizens, including name giving and adoptions.[77]  The President of the Criag Tribal Association, Clinton Cook Sr., stated that the "land was taken into trust to enhance [the] Tribe's economic sovereignty" and "ability to offer more tribal programming."[78]  The Tribe is also using its trust lands to support plans for expanded services, including an inter-tribal court, senior center, and early childhood development center.[79]  Amici's experiences are a far cry from the picture that the State

---

[72] Jackson Decl. ¶¶ 14–15.
[73] Jackson Decl. ¶ 15.
[74] Jackson Decl. ¶ 15.
[75] Jackson Decl. ¶¶ 9, 16.
[76] Cook Decl. ¶ 6.
[77] Cook Decl. ¶ 6.
[78] Cook Decl. ¶¶ 7–9.
[79] Cook Decl. ¶¶ 8–9.

Amici Curiae Brief in Support of Intervenor-Defendant's                                    18
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 23 of 25

attempts to paint of the potential disastrous consequences of trust lands in Alaska. In fact, Amici's use of their trust lands demonstrates that trust land is leading to more locally-based, and culturally-appropriate services for Tribal citizens.

## CONCLUSION

For the foregoing reasons and the reasons outlined in the United States' and Tlingit & Haida's Cross-Motions for Summary Judgment, this Court should grant those motions and deny the State of Alaska's Motion for Summary Judgment.

Respectfully submitted this 23rd day of October 2023.

NATIVE AMERICAN RIGHTS FUND

*/s/  Matthew N. Newman*
Matthew N. Newman (Alaska Bar No. 1305023)
Megan R. Condon (Alaska Bar No. 1810096)
Grace Renee Singh (Alaska Bar No.2305059)

*Attorneys for Craig Tribal Association and Organized Village of Kake*

Amici Curiae Brief in Support of Intervenor-Defendant's
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG

19

Case 3:23-cv-00007-SLG    Document 23    Filed 10/23/23    Page 24 of 25

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, a true and correct copy of the foregoing

CRAIG TRIBAL ASSOCIATION AND ORGANIZED VILLAGE OF KAKE'S AMICI

CURIAE BRIEF IN SUPPRT OF INTERVENOR-DEFENDANT TLINGIT &

HAIDA'S CROSS-MOTION FOR SUMMARY JUDGMENT was served electronically

on the parties of record pursuant to the Court's CM/ECF system.

*/s/  Matthew N. Newman*

Amici Curiae Brief in Support of Intervenor-Defendant's                                    20
Cross-Motion for Summary Judgment
*State of Alaska v. Newland et al.*, Case No. 3:23-cv-00007-SLG
Case 3:23-cv-00007-SLG     Document 23     Filed 10/23/23     Page 25 of 25