TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
CHARMAYNE G. STALOFF, Trial Attorney
WILLIAM J. CRUM, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 305-5628
Email: charmayne.staloff@usdoj.gov

*Attorneys for the United States*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>      Plaintiff,<br><br>  v.<br><br>BRYAN NEWLAND, in his official capacity as Assistant Secretary, Indian Affairs, U.S. Department of the Interior;<br>and U.S. DEPARTMENT OF THE INTERIOR<br><br>      Defendants,<br><br>  and<br><br>CENTRAL COUNCIL OF THE TLINGIT & HAIDA INDIAN TRIBES OF ALASKA,<br><br>      Intervenor-Defendant. | Case No. 3:23-cv-00007-SLG<br><br><br>**UNITED STATES' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 1 of 33

<b>TABLE OF CONTENTS</b>

**INTRODUCTION** ........................................................................................ 1

**I. This Is Not a Major Questions Case.** ................................................. 1

    **A. State-Specific Cases Do Not Implicate the Major Questions Doctrine.** ...... 2

    **B. This Case Does Not Present a Major Question.** ........................... 4

        **1. The State's Major Questions Argument Relies on Unwarranted Assumptions about the Future of Trust Acquisitions in Alaska and Jurisdictional Consequences.** ...................................... 4

        **2. The State's Major Questions Argument Relies on Its Misunderstanding of the Current Status of Tribal Jurisdiction in Alaska.** .......................... 6

**II. AIRA Section 1 and the Alaska Definition Clearly Authorize the Secretary to Take Land in Trust for the Tribe.** ........................................ 9

**III. Congress Has Not Repealed AIRA Section 1.** ................................ 12

    **A. ANCSA** ........................................................................... 13

    **B. 1991 ANCSA Amendments** ............................................... 17

    **C. VAWA 2013 and 2022** ..................................................... 18

    **D. FLPMA** ......................................................................... 19

**IV. Section 19 Does Not Limit the Secretary's Trust Acquisition Authority in Alaska, and the State Offers No Viable Argument to the Contrary.** ............. 20

    **A. The Alaska Definition Clearly and Independently Confirms that Alaska Natives are "Indians" under the IRA.** ................................... 21

    **B. Legislative History Confirms that Congress Broadly Included Alaska Natives in the IRA.** ......................................................... 22

    **C. The State's Policy Complaints Do Not Diminish Interior's Carefully Regulated Trust Acquisition Authority nor the IRA's Broad Remedial Purposes.** ...................................................................... 23

**CONCLUSION** ...................................................................... 26

i

*State of Alaska v. Newland et al.*             Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

# TABLE OF AUTHORITIES

## Cases

*Alaska Indus. Dev. v. Biden*,
No. 3:21-cv-00245-SLG, 2023 WL 5021555 (D. Alaska Aug. 7, 2023)........................ 2

*Alyeska Pipeline Serv. Co. v. Kluti Kaah Native Vill. of Copper Ctr.*,
No. A87-0201 CV (HRH), 1995 WL 18256024 (D. Alaska Nov. 28, 1995)............... 17

*Akiachak Native Cmty. v. Salazar*,
935 F. Supp. 2d 195 (D.D.C. 2013) ...................................................................... passim

*Angasan v. U.S. Dep't of the Interior, Nat'l Park Serv.*,
No. 3:15-cv-00195 JWS, 2016 WL 11808643 (D. Alaska Apr. 25, 2016) .................. 13

*Ashley v. Fed. Express Corp.*,
No. 3:21-cv-00068-SLG, 2023 WL 2563145 (D. Alaska Mar. 17, 2023) ................... 13

*Carcieri v. Kempthorne*,
497 F.3d 15 (1st Cir. 2007)............................................................................... 13, 14

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984)................................................................................................ 25

*Club One Casino, Inc. v. Bernhardt*,
959 F.3d 1142 (9th Cir. 2020).................................................................................. 8

*Dep't of Fish and Game v. Fed. Subsistence Bd.*,
No. 3:20-cv-00195-SLG, 2023 WL 7282538 (D. Alaska Nov. 3, 2023)................... 2, 3

*Eleri v. Sessions*,
852 F.3d 879 (9th Cir. 2017) .................................................................................. 25

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................................................................................... 9, 10, 12

*Howard v. Republican Nat'l Comm.*,
No. CV-23-00993-PHX-SPL, 2023 WL 7301861 (D. Ariz. Nov. 6, 2023) ................... 2

*James v. Gen. Dynamics Land Sys., Inc.*,
582 F. Supp. 3d 673 (D. Alaska 2022) .................................................................... 13

i

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 3 of 33

*Jenkins v. Cnty. of Riverside,*
    398 F.3d 1093 (9th Cir. 2005)..................................................................................... 13

*Kahawaiolaa v. Norton,*
    386 F.3d 1271 (9th Cir. 2004)..................................................................................... 24

*Ledezma-Galicia v. Holder*,
    599 F.3d 1055 (9th Cir. 2010)..................................................................................... 20

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ....................................................................................................... 4

*Montana v. Blackfeet Tribe of Indians,*
    471 U.S. 759 (1985) ..................................................................................................... 25

*Morton v. Mancari,*
    417 U.S. 535 (1974) ..................................................................................................... 25

*Native Vill. of Eklutna v. U.S. Dep't of the Interior,*
    No. 19-cv-2388 (DLK), 2021 WL 4306110 (D.D.C. Sept. 22, 2021) ....................... 7, 8

*North Carolina Coastal Fisheries Reform Group v. Captain Gaston LLC,*
    76 F.4th 291 (4th Cir. 2023) ..................................................................................... 9, 10

*Posadas v. Nat'l City Bank of N.Y.,*
    296 U.S. 497 (1936) ..................................................................................................... 20

*Skidmore v. Swift,*
    323 U.S. 134 (1944) ..................................................................................................... 25

*United States v. Atl. Richfield Co.*,
    435 F. Supp. 1009 (D. Alaska 1977) ...................................................................... 15, 16

*United States v. Atl. Richfield Co.*,
    612 F.2d 1132 (9th Cir. 1980)..................................................................................... 15

*Upstate Citizens for Equal., Inc. v. United States,*
    841 F.3d 556 (2d Cir. 2016)........................................................................................ 24

*West Virginia v. EPA,*
    142 S. Ct. 2587 (2022) ........................................................................................ passim

*State of Alaska v. Newland et al.*            Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 4 of 33

**Statutes**

18 U.S.C. § 1151 ................................................................................ 18

25 U.S.C. § 1304 ............................................................................. 7, 18

25 U.S.C. § 1305 ..........................................................................6, 7, 18

25 U.S.C. § 1712 ............................................................................... 14

25 U.S.C. § 5118 ............................................................................... 24

25 U.S.C. § 5119 ............................................................................. 1, 12

25 U.S.C. § 5129 ..................................................................9, 20, 22, 23

25 U.S.C. § 5130 ............................................................................... 23

33 U.S.C. § 1377 ............................................................................... 17

43 U.S.C. § 1603 ........................................................................... 13, 16

43 U.S.C. § 1715 ............................................................................... 19

43 U.S.C. § 1719 ............................................................................... 19

43 U.S.C. § 1744 ............................................................................... 19

ANILCA, Pub. L. No. 105-83, 111 Stat. 1543 (1998). ......................... 3, 17

ANSCA, Pub. L. No. 100-241, 101 Stat. 1788 (1988)............................ 17

FLPMA, Pub. L. No. 94–579, 90 Stat. 2743 (1976) .............................. 19

**Regulations**

25 C.F.R. § 151.10 ............................................................................... 6

25 C.F.R. § 151.11 ............................................................................... 6

25 C.F.R. § 151.2 ............................................................................... 23

25 C.F.R. § 151.3 ............................................................................... 23

Land Acquisitions, 88 Fed. Reg. 86222 (Dec. 12, 2023) ........................ 6

*State of Alaska v. Newland et al.*                     Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

**Other Authorities**

Natasha Brunstein, *Major Questions in Lower Courts*, 75 Admin. L. Rev. 661 (2023)... 10

*In the Matter of: Appeal of Chairman's August 19, 2020 Disapproval of Amendment to Gaming Ordinance of the Central Council of Tlingit and Haida Indian Tribes of Alaska,* Final Decision and Order, Nat'l Indian Gaming Comm'n (Feb. 25, 2021).......7

Office of Tribal Justice, U.S. Dep't of Justice, *Concurrent Tribal Authority Under Public Law 83-280 in Alaska* 1–2 (Oct. 27, 2023) ................................................................. 6

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 6 of 33

## INTRODUCTION

In 1936, Congress enacted the Alaska Indian Reorganization Act ("AIRA"). AIRA Section 1, 25 U.S.C. § 5119, explicitly authorizes the Secretary of the Interior to acquire land in trust in Alaska. Yet in an effort to obtain an outcome that is contrary to reason and unsupported by plain statutory text, precedent, and congressional intent, the State of Alaska ("State") continues to insist that the major questions doctrine governs this case. It does not. This Court should disregard the State's attempt to reframe this case and conclude that Congress authorized the Secretary to acquire land in trust in under AIRA Section 1 and to exercise that authority to acquire the Parcel at issue in trust for the Central Council of the Tlingit & Haida Indian Tribes of Alaska ("Tribe").

In response to the United States' and Tribe's motions for summary judgment, the State effectively concedes that no subsequent legislation repealed AIRA Section 1. That should be the end of the matter. Should the Court consider whether Congress subsequently repealed Section 1 despite the State's concession, it should conclude that Congress did no such thing—and that the Secretary retains her authority today. *See Akiachak Native Cmty. v. Salazar*, 935 F. Supp. 2d 195, 203, 208 (D.D.C. 2013).

## I.     This Is Not a Major Questions Case.

This case does not implicate a major question. *See* ECF-19 at 36–39.[1] Even if it did, Congress provided the Secretary with "clear congressional authorization" to acquire

---

[1] Citations to parties' briefs refer to pagination of the document as filed, not the Court-stamped pagination.

*State of Alaska v. Newland et al.*                             Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

land in trust in Alaska and for the Tribe. *See* ECF-19 at 39-40; *infra* Section II.[2] While the

contours of the major questions doctrine are still being drawn by the lower courts, this

case falls outside them. This Court should conclude, consistent with its recent precedent,

that the doctrine does not govern this case. *See Alaska Indus. Dev. v. Biden*, No. 3:21-cv-

00245-SLG, 2023 WL 5021555, at \*11 (D. Alaska Aug. 7, 2023), and *Dep't of Fish and

Game v. Fed. Subsistence Bd.*, No. 3:20-cv-00195-SLG, 2023 WL 7282538, at \*7–8

(D. Alaska Nov. 3, 2023) ("*FSB*").

### A. State-Specific Cases Do Not Implicate the Major Questions Doctrine.

As this Court recently observed, "[i]n all of [the Supreme Court's major questions

doctrine cases], the broad scope of the challenged regulations impacted millions of

people *nationwide*." *FSB*, 2023 WL 7282538, at \*8 (emphasis added). Regardless of the

outcome of the Court's decision here, its consequences will be felt only within the State

of Alaska. While there are myriad grounds on which the Court should reject the State's

characterization of this case as implicating the major questions doctrine, *see* ECF-19 at

35–39, its limited geographic effect is reason enough.

The State has identified no authority to support its position that the major

questions doctrine should govern a case in which the effects are confined to a single state.

---

[2] If this Court agrees that the Secretary has clear congressional authorization, it need not determine whether this case raises a "major question," as the existence of plain statutory language demonstrating clear congressional authorization renders the major questions doctrine inapplicable in the first place. *See, e.g.*, *Howard v. Republican Nat'l Comm.*, No. CV-23-00993-PHX-SPL, 2023 WL 7301861, at \*3 (D. Ariz. Nov. 6, 2023).

2

*State of Alaska v. Newland et al.*      Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 8 of 33

Indeed, as the State acknowledges, this Court recently rejected the State's request to apply the doctrine in a case challenging the Federal Subsistence Board's ("FSB") decision to open an emergency hunt for rural subsistence users in Alaska. *See FSB*, 2023 WL 7282538, at *7–8. As this Court explained, the FSB "has no authority in any other state besides Alaska," nor does it have any authority outside Title VIII of the Alaska National Interest Lands Conservation Act ("ANILCA"), "an Alaska-specific statute." *Id.* at *8. The State's effort to distinguish this case from *FSB* are unavailing. The only statutes at issue here are, like ANILCA, Alaska-specific statutes.[3]

Lacking precedential support, the State instead asks the Court to consider a hypothetical in which an ANCSA-like statute applied to the entire nation, not just Alaska, to argue that what is at issue here is an exception to a general rule. ECF-25 at 26–27. Even assuming the scenario the State envisions would raise a major question, it could not be further from reality. Far from "creating exceptions to the general rule," ECF-25 at 27, the Secretary's acquisition of trust land in Alaska is consistent with the settled understanding of the United States that tribes in Alaska are Indian tribes like any other. The Court should reject the State's effort to turn the major questions doctrine on its head by extending its reach beyond a narrow, extraordinary set of cases with nationwide implications.

---

[3] Although the Secretary has authority to acquire land in trust outside Alaska, this case only implicates the exercise of that authority within Alaska.

3

*State of Alaska v. Newland et al.*          Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

## B. This Case Does Not Present a Major Question.

Even were the Court to consider applying the major questions doctrine despite the narrow geographic scope of this case, it should decline to do so. The Secretary has not "'claim[ed] to discover in a long-extant statute an unheralded power' representing a 'transformative expansion in [its] regulatory authority,'" *West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022), of the sort that implicates the major questions doctrine. *See* ECF-19 at 35-39. Rather, the State "asserts merely that the Secretary's decision to take land into trust" is contrary to law—"a garden-variety APA claim." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220 (2012).

The heart of the State's argument for applying the doctrine is that the acquisition of the Parcel in trust "create[s] territorial jurisdiction where none exists," ECF-25 at 8, and that such creation "is of vast economic and political significance to the State," *id.* at 26. That argument is based on speculation as to the future of trust acquisitions and potential jurisdictional consequences in Alaska, and on the State's misunderstanding of the status of existing tribal jurisdiction in Alaska.

### 1. The State's Major Questions Argument Relies on Unwarranted Assumptions about the Future of Trust Acquisitions in Alaska and Jurisdictional Consequences.

The State has not articulated why the Court should deem the assertion of tribal jurisdiction over Indian trust lands an issue of "vast economic and political significance,'" ECF-25 at 26, even *within* the State. As a preliminary matter, any estimates of the number of tribes that may in the future apply to have land acquired in

4

*State of Alaska v. Newland et al.*          Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 10 of 33

trust, or the number of acres that will be accepted in trust, are entirely speculative. But even assuming all 227 tribes in Alaska were to ask the Secretary to acquire land in trust on their behalf—an unlikely scenario—the State has failed to demonstrate that such a scenario would warrant application of the doctrine.

The State did not even mention specific anticipated effects of the acquisition of land in trust in its motion for summary judgment, *see* ECF-19 at 37–38, and in its response, it relegates those concerns to a footnote. ECF-25 at 27 n.76. The State makes no mention of criminal jurisdiction, which would remain unchanged because Alaska is a Public Law 280 state. *See* ECF-19 at 37. As to civil regulatory jurisdiction, the only specific consequence of trust acquisitions the State identifies is the possibility that tribes with trust land may, under some circumstances and with EPA approval, be treated as states under certain environmental statutes. ECF-25 at 27 n.76. While treatment as a state ("TAS") status is one of the benefits to tribes of having land held in trust, it is far from clear that tribal TAS status has "vast economic and political" implications for the State. *See West Virginia*, 142 S. Ct. at 2605. And as already noted, the State has identified no adverse consequences of the Secretary's 2017 acquisition of land in trust for the Craig Tribal Association. ECF-19 at 37 n.18.

Nor did the State challenge the Secretary's findings related to jurisdictional effects set forth in the Decision. As required under the Part 151 regulations, the Secretary notified the State and affected local governments of the Tribe's application and provided them an opportunity to comment on "the acquisition's potential impact[s] on regulatory

5

*State of Alaska v. Newland et al.*                              Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 11 of 33

jurisdiction, real property taxes and special assessments," 25 C.F.R. § 151.11(c), and

considered "[j]urisdictional problems and potential conflicts of land use which may arise"

as a result of the acquisition, *id.* § 151.10(f).[4] The State did not challenge the Secretary's

consideration of either regulatory provision.

### 2. The State's Major Questions Argument Relies on Its Misunderstanding of the Current Status of Tribal Jurisdiction in Alaska.

The State's argument for applying the major questions doctrine hinges on this

Court agreeing that this acquisition "creates territorial jurisdiction where none exists"

because, prior to issuance of the Decision, "the only tribe with territorial jurisdiction was

Metlakatla Indian Community." ECF-25 at 8, 28. The State is incorrect. Tribes in Alaska

already possess territorial jurisdiction. 25 U.S.C. § 1305(a) (recognizing and affirming

inherent tribal jurisdiction over Indians *within Alaskan Native Villages*).[5]  In fact, the

State cites to VAWA 2022's recognition of inherent tribal jurisdiction in Alaska, so it is

---

[4] Interior recently issued a final rule amending the Part 151 regulations. Land Acquisitions, 88 Fed. Reg. 86222 (Dec. 12, 2023). The new regulations do not govern the trust acquisition at issue in this case.

[5] *See also* Office of Tribal Justice, U.S. Dep't of Justice, *Concurrent Tribal Authority Under Public Law 83-280 in Alaska* 1–2 (Oct. 27, 2023), https://www.justice.gov/d9/2023-11/inherent_tribal_authority_in_alaska_memo_10-24-2023_final_word_version.pdf. The Violence Against Women Act Reauthorization of 2022 ("VAWA 2022") also provided that tribes in Alaska have full civil jurisdiction over the issuance and enforcement of protective orders, including against non-Indians, "arising *within the Village* of the Indian tribe." 25 U.S.C. § 1305(b). It also established a pilot program allowing up to thirty tribes to exercise "Special Tribal Criminal Jurisdiction" over people, including non-Indians, "present *in the Village* of the Indian tribe" *Id.* § 1305(c)–(d).

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 12 of 33

fully aware that civil and criminal tribal territorial jurisdiction already exists. *See* ECF-25 at 21 (citing 136 Stat. 49, 904-10, codified at 25 U.S.C. §§ 1304, 1305).

However, the State now makes the unfounded assertion that tribes in Alaska (except Metlakatla) lack territorial jurisdiction over *Indian country* to support its contention that this Decision constitutes a purportedly vast expansion of tribal jurisdiction. In doing so, the State relies on two rulings that specific Alaska Native allotments are not "Indian lands" under the Indian Gaming Regulatory Act ("IGRA") ECF-25 at 28–32 (citing *Native Vill. of Eklutna v. U.S. Dep't of the Interior*, No. 19-cv-2388 (DLK), 2021 WL 4306110, at *5 (D.D.C. Sept. 22, 2021) and *In the Matter of: Appeal of Chairman's August 19, 2020 Disapproval of Amendment to Gaming Ordinance of the Central Council of Tlingit and Haida Indian Tribes of Alaska,* Final Decision and Order, Nat'l Indian Gaming Comm'n (Feb. 25, 2021)).[6] These rulings are irrelevant because the jurisdictional status of Alaska Native allotments is not before this Court, and the Court should not issue an advisory opinion on that issue for the sake of determining whether this case presents a major question.[7]

---

[6] The United States explained in its opening brief, which the State incorrectly characterizes, that Alaska Native allotments constitute "Indian country," which the State wrongly asserted "is almost nonexistent in Alaska." ECF-16 at 11. To the extent the State disagrees with the characterization of Alaska Native allotments as "Indian country," *see* ECF-25 at 9 n.5, that issue is not before this Court.

[7] The State improperly cites to *Eklutna* for its broader claim that Metlakatla was the only tribe with territorial jurisdiction (again, presumably meaning territorial jurisdiction over *Indian country*). ECF-25 at 28 & n.77. *Eklutna* addressed only Alaska Native allotments; indeed, it does not mention Metlakatla or any other non-allotment Indian country in Alaska.

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 13 of 33

All parties to this case acknowledge that there is Indian country in Alaska *aside*

from Alaska Native allotments and the Annette Islands Reserve. *See* ECF-25 at 23 n.66

(identifying "three parcels of land held in trust by the Federal government," referring to

the lands held in trust for Kake, Angoon, and Klawock) and *id*. at 31 (identifying the

Craig Tribal Association parcel as being "placed into trust in 2017"); ECF-19 at 16. The

lands held in trust for those tribes were acquired pursuant to AIRA Section 1, the same

provision the Secretary relied on here.[8] "[A]s a matter of law, the federal government

confers tribal jurisdiction over lands it acquires in trust for the benefit of tribes." *Club*

*One Casino, Inc. v. Bernhardt*, 959 F.3d 1142, 1149 (9th Cir. 2020). Yet the State

questions, without argument or explanation, whether three tribes in Alaska with trust

lands "hold territorial jurisdiction" over those parcels. ECF-25 at 23 n.66. (The State does

not extend its skepticism to Craig Tribal Association's jurisdiction over its trust land.)

The State's effort to confuse the issue of tribal territorial jurisdiction in support of

its major questions doctrine argument fails. Indian country and tribal territorial

jurisdiction already exist in Alaska. The State's rhetoric does not alter that reality.

---

[8] The State's rejoinder would presumably be that three of the four parcels of land
currently held in trust in Alaska were acquired prior to the enactment of ANCSA doctrine.
True, and that is why the only relevant question in this case—as it was in *Akiachak*—is
whether subsequent legislation repealed the authority granted to the Secretary under
AIRA Section 1. The State has conceded that argument.

*State of Alaska v. Newland et al.*                                          Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 14 of 33

## II. AIRA Section 1 and the Alaska Definition Clearly Authorize the Secretary to Take Land in Trust for the Tribe.

Even were this Court to find that this case raises a major question, the statutory provisions at issue here constitute "clear congressional authorization" for the Secretary to acquire land in trust for Indians in Alaska generally and for the Tribe. ECF-19 at 39–40; *see West Virginia*, 142 S. Ct. at 2609. In AIRA Section 1, Congress specifically authorized the Secretary to acquire trust land for Indians in Alaska. 25 U.S.C. § 5119 (providing that the Secretary's trust acquisition authority "*shall* [hereafter] apply to the Territory [State] of Alaska") (emphasis added)). Congress could not have spoken more clearly. And in IRA Section 19, Congress explicitly and specifically provided that "[f]or the purposes of [the IRA], Eskimos and other aboriginal peoples of Alaska *shall* be considered Indians." 25 U.S.C. § 5129 (emphasis added).

In its response, the State points to two cases it believes present similar circumstances to the case at bar: *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ("*Brown & Williamson*") and *North Carolina Coastal Fisheries Reform Group v. Captain Gaston LLC*, 76 F.4th 291 (4th Cir. 2023) ("*Gaston*"). ECF-25 at 12–24. Neither is relevant. Unlike AIRA Section 1 and IRA Section 19, the broadly worded statutory provisions at issue in *Brown & Williamson* and *Gaston* left doubt as to whether Congress clearly authorized the agency to regulate, respectively, tobacco products or bycatch. In both cases, the agency (or, in the case of *Gaston*, an environmental

9

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 15 of 33

organization) sought to regulate *specific* conduct under a *general* statutory provision.[9]

Because it was not apparent from the statutory text whether Congress had "directly spoken

to the issue," *Brown & Williamson*, or provided "clear congressional authorization,"

*Gaston*, the courts looked to extratextual factors, including the existence of a "distinct

regulatory scheme," i.e., subsequently enacted legislation. *See* 529 U.S. at 133, 144;

76 F.4th at 297–98. Indeed, such lack of specificity in statutory language is a hallmark of

major questions cases. *See West Virginia*, 142 S. Ct. at 2609 ("[I]n certain extraordinary

cases, both separation of powers principles and a practical understanding of legislative

intent make us 'reluctant to read into *ambiguous statutory text* the delegation claimed to

be lurking there.'"); *Brown & Williamson*, 529 U.S. at 123 ("In extraordinary cases, . . .

there may be reason to hesitate before concluding that Congress has intended . . . an

*implicit* delegation" to an agency.) (emphasis added)); *Gaston*, 76 F.4th at 302 ("[A]n

*expansive, vaguely worded definition* is not akin to [the] clear congressional authorization"

the major questions doctrine requires) (emphasis added).

But where, as here, an agency relies on plain language directly conferring the

precise authority at issue, that constitutes clear congressional authorization. *See* ECF-19

at 39–40. The State has not identified a single case in which a court applied the major

---

[9] Scholars have identified *Gaston* as a singular outlier in the lower courts' application of the major questions doctrine. It is one of only two cases in which a court has applied the doctrine where no Executive branch agency was a party—and it is the only case in which the doctrine was applied in a case involving no agency action whatsoever. (EPA was not party to the case, nor has it claimed the authority or obligation to regulate bycatch under the Clean Water Act.) Natasha Brunstein, *Major Questions in Lower Courts*, 75 Admin. L. Rev. 661, 668 n.39 (2023).

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

questions doctrine to find that an agency lacks authority that Congress specifically and expressly granted it in the text of the relevant statute. Here, the Court need not interpret "vague," "oblique," or "cryptic" statutory language, *see West Virginia*, 142 S. Ct. at 2608–10, to conclude that Congress clearly authorized the Secretary to acquire trust land in Alaska. Unlike the Food, Drug, and Cosmetic Act's ("FDCA") "drugs" or "devices" provision or the Clean Water Act's ("CWA") "pollutants" definition, Congress explicitly authorized the specific authority at issue in this case.[10] Under the guise of appeals to this Court's "common sense," the State asks the Court to ignore the clear congressional authorization set forth in the text of AIRA and the IRA.

Given this clear congressional authorization, whether Congress enacted a "distinct regulatory scheme" is irrelevant. Rather, subsequent legislation is relevant only to whether Congress impliedly repealed AIRA Section 1—an argument the State disavows. However, even were the Court to consider the State's "distinct regulatory scheme" theory of the case, it should find that no such scheme exists. In *Brown & Williamson* and *Gaston*, Congress authorized other agencies under other statutes to regulate the conduct at issue in the case. Not so here. Far from having spoken "subsequently and more

---

[10] Had the text of the FDCA expressly defined "drugs" or "devices" to include "tobacco products" or "cigarettes," or the Clean Water Act defined "pollutants" to include "bycatch from shrimp trawlers," the reviewing courts would undoubtedly have found that the FDA had authority to regulate cigarettes and EPA the authority to regulate bycatch. Any other result would require a court to ignore the plain text of a duly enacted statute, obliterating the distinction between the judicial and legislative branches of our government.

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 17 of 33

specifically to the topic at hand," *Brown & Williamson*, 529 U.S. at 121—that is, to the Secretary's trust acquisition authority—Congress has not spoken of it at all since 1936.

Nor should this Court consider Interior's prior interpretation of the effect of ANCSA on the Secretary's trust acquisition authority. As a preliminary matter, the State misrepresents the history of Interior's position on this issue. The Secretary did not acquire the Parcel in trust after 50 years of disclaiming authority to acquire land in trust in Alaska. *See* ECF-25 at 27. Interior began reexamining the Part 151 Alaska exception and the rationale behind it nearly 30 years ago, *see* ECF-19 at 6, and determined that the exception was unwarranted seven years ago, *id.* The State's suggestion that this Decision represents a sudden departure from Interior's prior interpretation is disingenuous.

Further, the courts in *Brown & Williamson* and *Gaston* considered the agencies' prior understanding of the scope of their authority—or, in the case of *Gaston*, the agency's *current* understanding that it lacked the authority—to inform the analysis of whether the broad statutory provision at issue in the case authorized the specific authority sought. But as discussed above, there is no analogous broad statutory language at issue in this case. Congress explicitly granted the Secretary the authority exercised here.

## III.    Congress Has Not Repealed AIRA Section 1.

As set forth above, Congress provided plainly that the Secretary's trust acquisition authority "shall [hereafter] apply to . . . Alaska." 25 U.S.C. § 5119. Congress did not subsequently repeal that authority. ECF-19 at 10–25. The State not only fails to address Defendants' argument that Congress never repealed AIRA Section 1, but it explicitly

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 18 of 33

refuses to do so and disavows any argument to the contrary. ECF-25 at 12 ("The State is making a major question[s] doctrine argument, not an implied repeal argument."); *id.* at 16 ("The State is not arguing that Congress implicitly repealed the Alaska IRA."). The State therefore concedes that Congress has not repealed AIRA Section 1. *See Angasan v. U.S. Dep't of the Interior*, *Nat'l Park Serv.*, No. 3:15-cv-00195 JWS, 2016 WL 11808643, at *5 (D. Alaska Apr. 25, 2016).[11] To the extent this Court considers the issue despite the State's concession, it should find that Congress never repealed AIRA Section 1.

## A. ANCSA

ANCSA did not explicitly or impliedly repeal AIRA Section 1. *See* ECF-19 at 10–25. The State fails to argue otherwise. Rather, the State argues—contrary to the D.D.C.'s decision in *Akiachak*—that an application to have land taken into trust constitutes a "claim" based on aboriginal right or title that is therefore disallowed under 43 U.S.C. § 1603. ECF-25 at 35–36. The State's novel argument rests on several faulty premises.

The State begins by objecting to comparisons of ANCSA to other Indian land claim settlements. *Id.* at 33–34. According to the State, the First Circuit's holding in *Carcieri v. Kempthorne*, 497 F.3d 15, 34 (1st Cir. 2007)—that the Rhode Island Indian

---

[11] The State's failure to respond to Defendants' repeal arguments likely constitutes waiver. *See James v. Gen. Dynamics Land Sys., Inc.*, 582 F. Supp. 3d 673, 679 (D. Alaska 2022) (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding that plaintiff abandoned claims by not raising them in opposition to motion for summary judgment)). If the Court agrees that the presumption against implied repeal is the proper framework for deciding this case, it should grant summary judgment in Defendants' favor as a matter of law. See *Ashley v. Fed. Express Corp.*, No. 3:21-cv-00068-SLG, 2023 WL 2563145, at *7 (D. Alaska Mar. 17, 2023).

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 19 of 33

Claims Settlement Act's extinguishment of aboriginal title did not curtail the Secretary's trust acquisition authority—is inapposite here. *Id.* at 34–35. The State suggests that ANCSA is "broader" than the Rhode Island statute, extinguishing not only aboriginal title but all claims "based on" aboriginal title.[12] *Id.* at 34–35. Not so; the Rhode Island statute also extinguished claims based on aboriginal title (in addition to claims based on use and occupancy). 25 U.S.C. § 1712(a)(3); *see Carcieri*, 497 F.3d at 36 (describing (a)(3) as "cover[ing] claims based on other forms of title, besides aboriginal title"). The legislative history confirms that language in the Rhode Island statute providing for "present-day extinguishment of Indian [aboriginal] title *and all claims arising therefrom . . .* was consistent with the extinguishment language used in [ANCSA]." S. Rep. No. 95-972, at 9 (1978). Thus, like ANCSA, the Rhode Island Indian Claims Settlement Act extinguished claims "based on" aboriginal title.

　　　Just as the First Circuit found in *Carcieri*, "[t]he Secretary's power [to acquire land in trust] does not turn on [a t]ribe's original aboriginal interest in the [p]arcel." 497 F.3d at 37. As such, the Court should reject the State's argument that the Tribe's request or the Decision violates ANCSA's extinguishment of claims of or based on aboriginal title or right. In its opening brief, the State characterized the Secretary's Decision as "resurrecting" aboriginal title through the trust acquisition and suggested that

---

[12] The State observes that neither the Rhode Island nor the Connecticut settlement acts contained provisions similar to ANCSA's declaration of policy. ECF-25 at 35–36. As previously discussed, ANCSA's declaration of policy lacks substantive force and does not prohibit the acquisition of land in trust outside the settlement. ECF-19 at 17–18.

*State of Alaska v. Newland et al.*　　　　　　　　　　　　Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

the Tribe's request constituted a "claim" for aboriginal title. ECF-16 at 43–44, 46. In support of its argument, the State pointed to two Part 151 findings in the Decision: (1) "that the Property is uniquely situated to meet [the Tribe's] need to regain land that it previously lost and to consolidate existing tribal landholdings" (considering the Tribe's need for additional land under § 151.10(b)); and (2) that the Property is located within the Tribe's "recognized traditional homelands" (considering the location of the Property under § 151.11(b)). ECF-16 at 35–36, 43. Neither the Tribe's application to have the land acquired in trust nor those findings constitute a claim for aboriginal title. *See* ECF-19 at 19–20 & n.12; *Akiachak*, 935 F. Supp. 2d at 205. Those findings merely provide information concerning a nexus between the Tribe and the land acquired.

The State now seeks to resuscitate its claim by arguing that the Tribe's fee-to-trust application constitutes a "'claim' *based on*" aboriginal title in violation of ANCSA. ECF-25 at 35–36 (emphasis added). That argument fares no better. In *Atlantic Richfield Co.*, on which the State relies, the United States and intervenor Inupiat Community of the Arctic Slope sued the State and private corporations after ANCSA was enacted, alleging trespass to Native land prior to enactment. *United States v. Atl. Richfield Co.*, 612 F.2d 1132 (9th Cir. 1980). As the district court explained, the complaint's underlying theory was that before ANCSA, the Eskimos of the Arctic Slope had a right of exclusive possession of the land in question based on aboriginal title. *United States v. Atl. Richfield Co.*, 435 F. Supp. 1009, 1014 (D. Alaska 1977). In other words, the United States and tribe brought trespass "claims against . . . the State" and "other persons" that were

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 21 of 33

directly "based on claims of aboriginal . . . title." 43 U.S.C. § 1603(c). The district court found that such a claim was impermissible after ANCSA. *See* 435 F. Supp. at 1022; *Akiachak*, 935 F. Supp. 2d at 204–05. But no such claim exists here. No statute or regulation requires the Secretary to consider aboriginal rights—much less conclude that such rights exist—when deciding whether to acquire land in trust for an Indian tribe. While the Secretary is not precluded from considering a tribe's history, including the location of its traditional homelands, the existence of an aboriginal right is not a necessary predicate for the acquisition of land in trust. The State makes no effort to explain otherwise.

The State also misinterprets the D.D.C.'s explanation in *Akiachak* that an application to have land acquired in trust cannot be a "claim" because the Secretary has discretion to grant or deny those applications. *See Akiachak*, 935 F. Supp. 2d at 205. The State acknowledges that the Secretary has such discretion, but now asserts it is "not unbounded." ECF-25 at 35. The State suggests that the Secretary's consideration of the location of the Tribe's traditional homelands is impermissible and that considering the Tribe's history and connection to an area when evaluating the Tribe's need for additional land somehow converts the Tribe's request into a claim based on aboriginal title. *Id.* at 35–36. The State mistakenly conflates the factors properly weighed in the Secretary's Decision with a claim based on aboriginal title. To the extent the State means to argue that the Secretary improperly exercised her discretion by considering those factors, the State has waived such claims by failing to raise them in its opening brief. *See* ECF-19 at

16

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 22 of 33

8. But more fundamentally, as the D.D.C. explained in *Akiachak*, the fact that the Secretary has discretion to deny an application by a tribe to acquire land in trust means that such an application is not a "claim" at all, much less a claim "against" the United States, the State, or anyone else. *Akiachak*, 935 F. Supp. 2d at 204–05; *see* ECF-19 at 19.

### B. 1991 ANCSA Amendments

Nor do the 1991 amendments to ANCSA evince congressional intent to repeal AIRA Section 1. Congress's decision not to include the proposed amendments shows only that it chose not to *reiterate* the grant of authority it had already provided in 1936 in AIRA Section 1. *See* ECF-19 at 10. Further, as the State acknowledges, Congress included an express disclaimer that the amendments neither "validate[d] [n]or invalidate[d] . . . any assertion that Indian country . . . exists or does not exist" in Alaska. Pub. L. No. 100-241, 101 Stat. 1788 (1988). *See* ECF-19 at 25.[13] As this Court observed, in enacting the amendments, Congress "exercised great care to make it clear that the amendatory act was not to tilt the scale one way or the other as regards the Indian Country issue." *Alyeska Pipeline Serv. Co. v. Kluti Kaah Native Vill. of Copper Ctr.*, No. A87-0201 CV (HRH), 1995 WL 18256024, at *15 n.53 (D. Alaska Nov. 28, 1995). The House of Representatives provided that "the amendments 'should be scrupulously neutral' on the question of tribal powers or self-government. *Id.* (quoting H.R. Explanatory Statement, 100th Cong., 1st Sess. 1 (1987).

---

[13] Congress has included identical disclaimers in at least two other statutes. *See* 33 U.S.C. § 1377 (g)(3) (Clean Water Act); Amendments to ANILCA, Pub. L. No. 105-83, Title III, § 316(b)(2), 111 Stat. 1543 (1998).

*State of Alaska v. Newland et al.*                     Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 23 of 33

Amendments disclaiming *any* position on the existence of Indian country or tribal territorial jurisdiction in Alaska cannot be read as a repeal of the Secretary's trust acquisition authority—or even, in the State's formulation, as part of a "distinct regulatory scheme" addressing territorial jurisdiction.

### C. VAWA 2013 and 2022

The State also points—again within the misplaced context of a "distinct regulatory scheme"—to the Violence Against Women Reauthorization Act of 2013, 25 U.S.C. § 1304 ("VAWA 2013") and VAWA 2022. ECF-25 at 16–17, 20–22. VAWA 2013 allowed participating tribes—including those in Alaska—to exercise special domestic violence criminal jurisdiction over offenders, including non-Indians, in Indian country. 25 U.S.C. § 1304(b). As discussed above, VAWA 2022 recognized and affirmed Alaska tribes' inherent criminal and civil authority over all Indians in a tribe's Village and extended tribes' civil jurisdiction over protective orders, *id.* § 1305(b), and special Tribal criminal jurisdiction within Villages, *id.* § 1305(c)–(d).

The State does not explain how VAWA creates or contributes to a "'distinct regulatory scheme' to address territorial jurisdiction in Alaska," much less how such a scheme pertains to the Secretary's trust acquisition authority. *See* ECF-25 at 17. All that may be gleaned from VAWA 2022 is Congress's recognition that, at present, the places where most acts of domestic violence take place—that is, in Alaska Native Villages—are not "Indian country" under 18 U.S.C. § 1151. VAWA 2022 ensures that Alaska Native women can benefit from VAWA's protections where they need it most.

*State of Alaska v. Newland et al.*                                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 24 of 33

Refusing to engage in any discussion of statutory repeal, the State does not argue that either VAWA 2013 or 2022 repealed AIRA Section 1. Rightly so, because if the Court were to construe the State's argument in the statutory repeal context, it must conclude that neither had that effect. Plainly, neither mentions, much less explicitly repeals, AIRA Section 1. Nor does either do so impliedly by irreconcilably conflicting with or covering the whole subject of the Secretary's AIRA Section 1 trust acquisition authority.

### D. FLPMA

The State's discussion of the Federal Land Policy and Management Act of 1976 ("FLPMA") is equally unavailing. The State argues that FLPMA's retention of AIRA Section 1—and repeal of Section 2—"had no bearing" on Congress's intent regarding trust acquisition authority in Alaska. *See* ECF-25 at 24. No bearing, the State argues, because FLPMA was "a bill entirely focused on *federal public land*," *id.* (emphasis in the State's brief), whereas the question here is "the authority to take privately held fee land into trust," *id.* This distinction is beside the point. Congress knew how to repeal sections of AIRA; it repealed Section 2 and kept Section 1. The fact that it did so in a statute covering myriad types of land and property is irrelevant. *See, e.g.*, 43 U.S.C. §§ 1715, 1719, 1744, (addressing non-Federal land, mineral interests, and mining claims, respectively). And FLPMA further specified that "[n]othing in this Act shall be deemed to repeal any existing law by implication," Pub. L. No. 94–579, 90 Stat. 2743, § 701(f) (1976), a fatal blow to the State's demand that Congress make a "clear statement" that it wanted to retain Section 1, *see* ECF-25 at 24. No statement could be clearer.

*State of Alaska v. Newland et al.*      Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 25 of 33

In sum, the State fails to overcome the "extremely strict" presumption against implied repeals. *Ledezma-Galicia v. Holder*, 599 F.3d 1055, 1064 (9th Cir. 2010). None of the State's arguments about ANCSA and its amendments, VAWA, or FLPMA show Congress's "clear and manifest" intent to silently repeal AIRA Section 1 or cast any doubt on Congress's express provision of authority to acquire land in trust in Alaska. *See Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936). "Because it is possible to give effect to both ANCSA and [Section 1], it is the court's obligation to do so." *Akiachak*, 935 F. Supp. 2d at 207.

## IV. Section 19 Does Not Limit the Secretary's Trust Acquisition Authority in Alaska, and the State Offers No Viable Argument to the Contrary.

Section 19 contains four definitions of "Indian," the last of which directs that "[f]or the purposes of [the IRA], Eskimos and other aboriginal peoples of Alaska shall be considered Indians." 25 U.S.C. § 5129. This "Alaska Definition" stands independent of Section 19's first three definitions. Nonetheless, the State maintains that tribes in Alaska must also meet one of the first three definitions, and that because (in the State's view) they meet none, Section 19 limits trust acquisitions for tribes in Alaska. *See* ECF-25 at 37–38, 40–42. *See also* ECF-16 at 58–59.

The State's argument remains wrong for three reasons. First, the IRA's plain text, structure, and purpose unambiguously show that the Alaska Definition is a standalone definition.[14] Second, even assuming ambiguity, Interior's interpretation merits deference

---

[14] The State also mischaracterizes Interior's argument about the significance of the Alaska Definition. It asserts that Interior has conceded that if the Alaska Definition is an ethnographic clarification, then "a tribe in Alaska must also meet one of the first three

*State of Alaska v. Newland et al.*   Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 26 of 33

because the legislative history proves that Congress wanted to broadly include Alaska Natives in the IRA, not make an "ethnographical" clarification that one of the first three definitions simply might include them. Third, trust acquisitions for individual Indians and the IRA's far-reaching remedial purposes are fully consonant with broad inclusion of tribes in Alaska, and easily withstand the State's policy broadsides.

### A. The Alaska Definition Clearly and Independently Confirms that Alaska Natives are "Indians" under the IRA.

First, the State says that the Tribe must satisfy two definitions: the Alaska Definition plus one of Section 19's other three. The text says otherwise. Section 19 mandates that Alaska Natives "*shall*" be considered Indians—not that they "*can*" be so long as they also meet one of the first three definitions. *See* ECF-19 at 29-30. Additionally, Section 19 structurally sets the Alaska Definition apart from the previous three definitions, emphasizing its independence and role in the Section. *See id.* at 29. The State ignores this, asking the Court to rewrite and restructure the Section, to substitute "can" for "shall," and to import a second category of Indian—an "ethnographic Indian"—which does not exist in the IRA. *See* ECF-25 at 37–38. Additionally, the State does not dispute that the Tribe satisfies the Alaska Definition. Because satisfaction of this definition confirms the Tribe is "Indian" for the purposes of having land acquired under

definitions." ECF-25 at 40 (citing ECF-19 at 30). Interior has made no such concession. Interior argued in the quoted paragraph that requiring a tribe in Alaska to meet one of Section 19's first three definitions would render the Alaska Definition surplusage. *See* ECF-19 at 30. The Court should not be misled by the State's selective misquotation.

21

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Section 5, the Tribe does not need to meet any other definition, and the Secretary's authority is confirmed.

### B. Legislative History Confirms that Congress Broadly Included Alaska Natives in the IRA.

Second, even if Section 19's text and structure were ambiguous, the legislative history confirms Interior's understanding. For example, Commissioner Collier's testimony made clear that Congress included the Alaska Definition to ensure Alaska Natives could receive the IRA's benefits, in his words, to "extend the land acquisition and credit benefits to these Alaska Indians who are pure-blood Indians and very much in need, and they are neglected, and they are Indians pure and simple." AR0000061; *see generally id.* at 0000058–61.

For its part, the State mischaracterizes the legislative record, even enlisting the words of Secretary Ickes. Secretary Ickes told Congress in a letter that he understood AIRA Section 1, applying Section 19 to Alaska, as having brought Alaska Indians and Eskimos "fully within the terms" of the IRA. AR0000064–65. In so doing, Secretary Ickes straightforwardly articulated how AIRA broadened the IRA's scope. But the State insists that Secretary Ickes meant that Congress had made a "clarification" that Alaska Natives were "ethnographically 'Indian'" and therefore were required to meet one of the first three definitions. ECF-25 at 38. This claim distorts how the Secretary contemporaneously understood the statute whose implementation Congress had charged him to lead. The legislative history shows that Congress meant what it said: "For the

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 28 of 33

purposes of [the IRA]," 25 U.S.C. § 5129, Alaska Natives "are Indians pure and simple," AR0000061.

### C. The State's Policy Complaints Do Not Diminish Interior's Carefully Regulated Trust Acquisition Authority nor the IRA's Broad Remedial Purposes.

Third, the State conjures a hypothetical about trust acquisitions for individuals that Interior's standalone interpretation of the Alaska Definition supposedly allows. But this hypothetical is irrelevant to the facts of this case. The State does not dispute that the Tribe is Alaska Native and meets the Alaska Definition. *See* ECF-25 at 37–42. That is all that Section 19 requires to confirm the Assistant-Secretary's authority to acquire the Parcel in trust.

Moreover, the hypothetical is unlikely under Interior's regulations governing trust acquisitions for individuals. Those regulations root acquisitions for individual Indians in tribal affiliation and geographic location, thus avoiding the type of distinctions the State's hypothetical foists upon Interior. *See* 25 C.F.R. § 151.2 (limiting the definition of "Individual Indian" based on tribal enrollment, reservation residency, and blood quantum of a tribe, and defining "tribe" as Indian tribes recognized pursuant to 25 U.S.C. § 5130, i.e., federally recognized tribes). Additionally, the regulations limit acquisitions for individuals to (1) land that is located within or adjacent to the exterior boundaries of a reservation; or to (2) land that is already in trust or restricted status. *See id.* § 151.3(c). Thus, federal regulations already circumscribe potential individual acquisitions and

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 29 of 33

forestall the unbounded authority the State imagines. The State neglects these regulations; its hypothetical is therefore untethered from how Interior implements the IRA.

Furthermore, the State's hypothetical amounts to a policy complaint, not a legal one. Having created the Secretary's land-into-trust authority, Congress may expand or contract it in Alaska or elsewhere; the State identifies no constitutional infirmity in that power. *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1282–83 (9th Cir. 2004) (sustaining the constitutionality of Congress's differential treatment of Native Hawaiians and mainland tribes due to the unique history of U.S.-Hawaiian relations, and approvingly citing statutes that provide Native Hawaiians exclusive benefits). Nor can it identify a defect using the IRA's text, purpose, or legislative history. Instead, it criticizes the policy itself. *See* ECF-25 at 39. The State may think it "makes no sense," *id.*, that Congress brought Alaska Natives "fully within the terms" of the IRA, AR0000064–65, but that is for Congress to decide.

The State adds to this contemporary policy complaint a historical one. It argues that one of the IRA's remedial purposes of ending allotment does not apply in Alaska, and that this either shows the Alaska Definition is not standalone or works against Interior in some other obscure way. ECF-25 at 39–40. No matter. "[N]othing in the IRA's text limits its remedial reach to tribes affected by the Dawes Act," *Upstate Citizens for Equal., Inc. v. United States*, 841 F.3d 556, 573 (2d Cir. 2016), and when Congress wanted to exclude specific tribes or regions from the "far-reaching" statute, "it did so explicitly," *id.* (citing 25 U.S.C. § 5118, the IRA's territorial exclusion, excepting Alaska). Indeed, Congress's

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment

Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 30 of 33

remedial purpose was broader and more prospective than remedying the repercussions of allotment, *Morton v. Mancari*, 417 U.S. 535, 542 (1974). It sought for tribes "a greater degree of self-government, both politically and economically," *id.* Those goals applied in Alaska. Alaska Delegate Anthony Dimond told fellow Congress members that "white men have come in and taken up the best locations," jeopardizing land and prosperity for tribes in Alaska. AR0000060. That is why Congress extended the IRA to tribes in Alaska "pure and simple." *See* AR0000061. Fundamentally, the State's criticisms of Congress's reasons for enacting AIRA are irrelevant. The legally salient point is that Congress did so.

Equally irrelevant are the State's closing criticisms of *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The Alaska Definition is unambiguous; but even were the Court to identify some ambiguity, the legislative history discussed above and in prior briefing, ECF-19 at 27–31, resolves it. And even if those interpretive tools did not, Interior's conclusion regarding the Alaska Definition's standalone nature, AR0000057, is "based on a permissible construction" of the statute, *Eleri v. Sessions*, 852 F.3d 879, 882 (9th Cir. 2017) (quoting *Chevron*, 467 U.S. at 843), and evinces "thoroughness . . . in its consideration," "validity" in "its reasoning," and "consistency with earlier and later pronouncements," *Skidmore v. Swift*, 323 U.S. 134, 140 (1944). Furthermore, "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]" *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). That has been and remains the law.

The State closes by saying this case is not about politics, but what Congress wanted the law to mean. Interior agrees. Congress enacted the IRA and AIRA to include Alaska Natives within the IRA's scope, and it did not at the same time qualify that inclusion through Section 19 so as to render the acquisition here was unlawful. The State offers no credible arguments to the contrary.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks this Court to deny the State's Motion and grant the United States' Cross-Motion for Summary Judgment.

DATED:  January 19, 2024.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

/s/ Charmayne G. Staloff
CHARMAYNE G. STALOFF, Trial Attorney
WILLIAM J. CRUM, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
OF COUNSEL:                               Washington, D.C. 20044
Robert Hitchcock, Attorney-Advisor        TEL:  (202) 616-3148
Melissa Thaisz, Attorney-Advisor          FAX:  (202) 305-0275
Office of the Solicitor                   Email: charmayne.staloff@usdoj.gov
U.S. Department of the Interior           *Attorneys for the United States*

26

*State of Alaska v. Newland et al.*                    Case No. 3:23-cv-00007-SLG
U.S. Reply in Support of Cross-Motion for Summary Judgment
Case 3:23-cv-00007-SLG   Document 28   Filed 01/19/24   Page 32 of 33

## CERTIFICATE OF SERVICE

I, Charmayne G. Staloff, hereby certify that, on January 19, 2024, the foregoing UNITED STATES' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT will be sent electronically to the registered parties as identified on the Notice of Electronic Filing.

/s/ Charmayne G. Staloff
CHARMAYNE G. STALOFF, Trial Attorney
Indian Resources Section
Environment and Natural Resources Division
United States Department of Justice

## CERTIFICATE OF WORD COUNT

The Court granted the United States' unopposed motion for an enlargement of the word limit to 7,200 words. ECF-27. I certify that this document complies with the Court-ordered word count limit because it contains 7,118 words.