Richard D. Monkman
rdm@sonosky.net
Lloyd B. Miller
lloyd@sonosky.net
Whitney A. Leonard
whitney@sonosky.net
Sonosky, Chambers, Sachse,
  Miller & Monkman, LLP
510 L Street, Suite 310
Anchorage, Alaska 99501
Telephone: (907) 258-6377
Facsimile: (907) 272-8332

*Attorneys for Tlingit & Haida*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, )<br><br>Plaintiff, )<br><br>v. )<br><br>BRYAN NEWLAND *et al.*, )<br><br>Defendants, )<br><br>and )<br><br>CENTRAL COUNCIL OF TLINGIT & )<br>HAIDA INDIAN TRIBES OF )<br>ALASKA, )<br><br>Intervenor-Defendant. ) | Case No. 3:23-cv-00007-SLG |

## TLINGIT & HAIDA'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

Case 3:23-cv-00007-SLG   Document 29   Filed 02/02/24   Page 1 of 16

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

    I.     THE STATE'S ARGUMENTS CANNOT OVERCOME THE EXPRESS
            GRANT OF AUTHORITY IN THE IRA ................................................................ 1

    II.    TLINGIT & HAIDA EASILY FALLS WITHIN IRA SECTION 19. .................... 4

CONCLUSION ........................................................................................................ 11

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

# TABLE OF AUTHORITIES

**Cases**

*Carcieri v. Salazar*, 555 U.S. 379 (2009) .............................................................. 7

*City of Emeryville v. Robinson*, 621 F.3d 1251 (9th Cir. 2010) ...................................... 10

*Confederated Tribes of Grand Ronde Cmty. v. Jewell*, 830 F.3d 552 (D.C. Cir. 2016) ..... 5

*County of Amador v. U. S. Dep't of Interior* 872 F.3d 1012 (9th Cir. 2017) .......... 7, 10, 11

*Estate of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953 (9th Cir. 2014) .......... 10

*Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010) ............................................... 10

*Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893 (S.D. Cal. 2021) .................... 10

*Hurry v. Fin. Indus. Regul. Auth., Inc.*, 782 F. App'x 600 (9th Cir. 2019) ........................ 6

*In re Naturalization of Minook*, 2 Alaska 200, 220-21, 1904 WL 355 (D. Alaska 1904) .. 8

*Kahawaiolaa v. Norton*, 386 F.3d 1271 (9th Cir. 2004) ..................................................... 7

*Native Vill. of Eklutna v. U.S. Dep't of Interior*, No. 19-CV-2388 (DLF), 2021 WL
4306110, at *8-9 (D.D.C. Sept. 22, 2021) .................................................................. 3

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056 (9th Cir. 2007) ........................................ 6

*Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166 (9th Cir. 2016) ............................................ 10

*Reyes v. Wells Fargo Bank*, No. EDCV 17-909-JFW(KKx), 2017 WL 11568871 (C.D.
Cal. Aug. 17, 2017) .................................................................................................. 6

*Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999) .............................................................. 6

*Stand Up for Cal.! v. U.S. Dep't of Interior*, 204 F. Supp. 3d 212 (D.D.C. 2016) ............. 5

*Tlingit & Haida Indians v. United States*, 177 F. Supp. 452 (Ct. Cl. 1959) ...................... 7

**Federal Statutes**

18 U.S.C. § 1151(c) ........................................................................................................ 4

25 U.S.C. § 1305 ............................................................................................................ 2

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

25 U.S.C. § 479 ...................................................................................................... 7

25 U.S.C. § 479a(2) ............................................................................................... 7

25 U.S.C. § 5129 ..................................................................................................... 5

Alaska Tribal Public Safety Empowerment Act, Pub. L. No. 117-103, Div. W, tit. VIII, §§ 811-813, 136 Stat. 904, 904-910 (2022) (codified at 25 U.S.C. § 1305). ................... 2

Federally Recognized Indian Tribe List Act, Pub. L. No. 103–454, 108 Stat. 4791 (1994) ............................................................................................................... 7

**Other Authorities**

U.S. Dep't of Interior, Solic's Op. M-37079, *Partial Withdrawal of Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, and Clarification of Tribal Jurisdiction Over Alaska Native Allotments* (Feb. 1, 2024), *available at* https://www.doi.gov/sites/default/files/documents/2024-02/m37079-partial-wd-m36975-and-clarification-trbl-jurisdiction-over-ak-native-allotments-2124.pdf ................................................................................................ 4

iii

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

Case 3:23-cv-00007-SLG   Document 29   Filed 02/02/24   Page 4 of 16

**INTRODUCTION**

Having now disavowed any argument that ANCSA impliedly repealed the Alaska IRA, the State seeks refuge in the major questions doctrine, attempting to generate the ambiguity that might justify its application. But the major questions doctrine does not apply—and in any event, it does not help the State. Section 1 of the Alaska IRA and section 5 of the IRA *expressly* grant the Secretary of the Interior land-into-trust authority within Alaska. Because those provisions have never been repealed—as the State concedes—the Secretary retains her authority to take land into trust in Alaska.

Tlingit & Haida fully supports and concurs with the arguments presented in the Secretary's reply brief and therefore only offers supplemental remarks on two issues.

**ARGUMENT**

**I.    THE STATE'S ARGUMENTS CANNOT OVERCOME THE EXPRESS GRANT OF AUTHORITY IN THE IRA.**

Given the State's concession that ANCSA did not repeal section 1 of the Alaska IRA, the only question before the Court is whether the Alaska IRA clearly gives the Secretary the authority she claims: to take land into trust in Alaska. The State does not even attempt to answer that question in the negative; instead it essentially argues that the statute cannot mean what it says, because the result would be "giving" jurisdiction to Tribes, and that result would alter some imagined status quo. But as the Secretary explains well, the State is wrong both about the current status of tribal jurisdiction in Alaska and about the impact of taking a parcel into trust.

1

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG
Case 3:23-cv-00007-SLG   Document 29   Filed 02/02/24   Page 5 of 16

To begin with, Tribes *already* possess both civil and criminal jurisdiction in villages across Alaska, as the State acknowledges.[1]  For a recent example, the Alaska Tribal Public Safety Empowerment Act, enacted as part of the 2022 reauthorization of the Violence Against Women Act (VAWA), recognizes Alaska Tribes' inherent authority within their Villages.[2]  That authority includes the exercise of criminal and civil jurisdiction over all Indians, civil jurisdiction over *all* persons for various purposes covered by VAWA, and (for participating Tribes) criminal jurisdiction over all persons for covered crimes.[3]  And, again as the State admits, "Village" is defined in the statute not by reference to Indian country but instead as each Tribe's Alaska Native Village Statistical Area.[4]  In other words, even without Indian country, Tribes in Alaska today exercise territorial jurisdiction.

Notably, these provisions are not a "grant" of jurisdiction, as the State asserts; the statute expressly recognizes Tribes' *inherent* authority and specifies that nothing in these provisions "limits, alters, expands, or diminishes the civil or criminal jurisdiction of . . . any Indian tribe in the State"[5]—in other words, they recognize and permit Tribes to exercise their inherent authority.  Contrary to the State's suggestion, Congress's

---

[1] State of Alaska's Combined Opp'n & Reply 21-22, Dkt. 25 ("State Opp'n Br.").

[2] Alaska Tribal Public Safety Empowerment Act, Pub. L. No. 117-103, Div. W, tit. VIII, §§ 811-813, 136 Stat. 904, 904-910 (2022) (codified at 25 U.S.C. § 1305).

[3] *Id.* § 813(a)-(d) (codified at 25 U.S.C. § 1305(a)-(d)).

[4] *Id.* § 812(7).

[5] *Id.* § 813(i)(1) (codified at 25 U.S.C. § 1305(i)(1)).

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

recognition of tribal authority over non–Indian country lands does nothing to prove the State's case.[6]  It simply shows that *even* when Tribes lack Indian country within their Village, Congress still affirms their exercise of jurisdiction.  The bottom line is that Tribes already exercise both civil and criminal jurisdiction in Villages across the State regardless of the presence of Indian country in Alaska, and the Secretary's decision therefore does not open the floodgates to some unprecedented patchwork of jurisdiction.  For this reason alone, even if tribal jurisdiction were the issue before this Court (and it is not), the addition of Tlingit & Haida's small parcel to these numerous lands already under tribal jurisdiction does not constitute the sea change that the State suggests.

On the other side of the same coin, the State reads too much into two gaming cases in an effort to establish that Tribes lack jurisdiction over Indian country.  At most, the *Eklutna* and *Tlingit & Haida* decisions stand for the proposition that Tribes might not possess jurisdiction over all tribal members' allotments.  But neither decision makes the categorical statements that the State suggests.  Indeed, both opinions endorse a case-by-case "fact specific analysis of the Parcel in question" to determine whether tribal jurisdiction exists.[7]  Moreover, a recently issued Solicitor's Opinion has withdrawn (in

---

[6] *See* State Opp'n Br. at 22-23.

[7] *In the Matter of: Appeal of Chairman's Aug. 19, 2020 Disapproval of Amend. to Gaming Ordinance of the Cent. Council of Tlingit & Haida Indian Tribes*, Final Decision & Order, Nat'l Indian Gaming Comm'n, at 9 (Feb. 25, 2021); *see Native Vill. of Eklutna v. U.S. Dep't of Interior*, No. 19-CV-2388 (DLF), 2021 WL 4306110, at *8-9 (D.D.C. Sept. 22, 2021).  Although not critical to the issue here, the State is flatly wrong that these cases suggest allotments may not be Indian country. *See* State Opp'n Br. at 9 n.5.  Both decisions say just the opposite. *See Tlingit & Haida* at 8 ("There is no question that the Parcel in

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

relevant part) the prior Opinion that both the *Eklutna* and *Tlingit & Haida* decisions cited, instead concluding that there is a presumption *in favor of* tribal jurisdiction over Alaska Native allotments unless held by a non-member or geographically removed from the community.[8]   Ultimately, the fact that Tribes may not always exercise jurisdiction over Indian country only underscores the limited nature of the question this Court is called upon to decide.  These cases say nothing about tribal jurisdiction over *trust* lands, let alone about the only question presented here: whether the Secretary has authority to take land into trust.

Try as it might, the State cannot obscure the unmistakable language of the Alaska IRA:  Section 1 expressly gives the Secretary authority to take land into trust for Alaska Tribes, and that authority has never been repealed.

## II.    TLINGIT & HAIDA EASILY FALLS WITHIN IRA SECTION 19.

The State's responsive argument concerning the Alaska IRA abandons its original points, fails to respond to the Tribe's arguments, and presents lengthy "ethnographical" theorizing to justify its position.  But whether based on ethnography or any other morphology, the State's arguments fail.

---

question qualifies as Indian Country under 18 U.S.C. § 1151(c)."); *Eklutna*, 2021 WL 4306110, at *8 (discussing the jurisdictional status of "Indian country allotments in Alaska").

[8] U.S. Dep't of Interior, Solic's Op. M-37079, *Partial Withdrawal of Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, and Clarification of Tribal Jurisdiction Over Alaska Native Allotments* (Feb. 1, 2024), *available at* https://www.doi.gov/sites/default/files/documents/2024-02/m37079-partial-wd-m36975-and-clarification-trbl-jurisdiction-over-ak-native-allotments-2124.pdf.

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

First (and as the Secretary explains well in Section IV of her brief), Section 19's Alaska definition is a standalone provision.  It is clear, unambiguous, and brings the Tribe and all other Alaska Tribes within the IRA: "For the purposes of [the IRA], Eskimos and other aboriginal peoples of Alaska shall be considered Indians."[9] This definition is independent of Section 19's first three definitions.[10]  Nothing more need be said on this question.[11]

Second, the State's musings that the Alaska IRA was actually meant to address "ethnographical" confusion about whether Alaska Natives should be considered "Indians" miss the mark entirely.[12]  The State's opening brief was more accurate.  There, the State candidly pointed out that the definition was added to address the concern that Alaska Tribes did not have the sort of cultural or political organization the Government was used to dealing with in regard to Lower-48 Tribes, making Section 19's first sentence a poor fit in Alaska.[13]

---

[9] 25 U.S.C. § 5129; *see Confederated Tribes of Grand Ronde Cmty. v. Jewell*, 830 F.3d 552, 556-59 (D.C. Cir. 2016).

[10] United States' Reply in Supp. of Cross-Mot. for Summ. J. ("DOI Br.") § IV(A), Dkt. 28; *see* 25 U.S.C. § 5129.

[11] *Cf. Stand Up for Cal.! v. U.S. Dep't of Interior*, 204 F. Supp. 3d 212, 287 (D.D.C. 2016), *aff'd*, 879 F.3d 1177 (D.C. Cir. 2018) (tribes only need to satisfy one Section 19 definition to qualify under the IRA).

[12] *E.g.*, State Opp'n Br. at 38.

[13] State of Alaska's Mot. for Summ. J. & Mem. in Supp ("State MSJ") 52, Dkt. 16 (quoting Case & Voluck at 29 (3d Ed. 2012)).

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

As the Secretary points out, the legislative history of the Alaska IRA and the administrative record establish that this explanation is correct.[14]  And, regardless of the State's views on informal discussions based on now-outmoded "ethnographical" theories about whether "Eskimos" should be considered "Indians," the undeniable point is that the 1867 Treaty of Cession required the Government to treat Alaska Natives on par with Indians in the States: "The uncivilized [Alaska] tribes will be subject to such laws and regulations as the United States may, from time to time, adopt in regard to aboriginal tribes of that country."[15]  That was accomplished through the Alaska IRA.

Third, the Tribe moved for summary judgment on the State's *Carcieri* argument, explaining that even if the Tribe needed to satisfy one of the first three definitions in section 19, it plainly does so.  The State failed to respond in opposition and has effectively conceded that point.[16]

As the Solicitor noted, "Section 19 of the IRA provides a stand-alone definition of 'Indian' applicable to tribes in Alaska, obviating the need to make a [Section 19] *Carcieri*

---

[14] DOI Br. § IV(B) (citing, inter alia, AR0000061, AR0000064–65); *see* AR0003295; AR0003314.

[15] AR0004404 (Treaty of Cession).

[16] The State's "failure to respond to that argument constitutes waiver." *Hurry v. Fin. Indus. Regul. Auth., Inc.*, 782 F. App'x 600, 602 (9th Cir. 2019) (citing *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1063 n.3 (9th Cir. 2007); *Smith v. Marsh*, 194 F.3d 1045 (9th Cir. 1999)); *Reyes v. Wells Fargo Bank*, No. EDCV 17-909-JFW(KKx), 2017 WL 11568871, *4 (C.D. Cal. Aug. 17, 2017) (collecting cases); *see* T&H Consolidated Cross-Mot., Memo., & Opp'n ("T&H Opening Br.") 22-30, Dkt. 21.

'under Federal jurisdiction' determination for [Alaska land into trust] acquisitions."[17]  But should the Court conclude that the first Section 19 definition of "Indian" as interpreted in *Carcieri* applies to Alaska tribes, despite the separate Alaska definition, the undisputed record firmly establishes that the Tribe has been a "recognized Indian tribe … under federal jurisdiction" since the 1867 Treaty of Cession with Russia.[18]

The first sentence of Section 19 has two conditions: that a Tribe be recognized at the time the parcel is taken into trust, and that the Tribe be "under federal jurisdiction" by the United States before 1934 (or 1936, for Alaska IRA purposes, assuming *arguendo* that the first sentence applies at all).[19]  Tlingit & Haida qualifies under both conditions.

---

[17] Solicitor's Op. M-37076 (Nov. 16, 2022), at 3.

[18] The State initially and incorrectly argued that "Most tribes in Alaska were not recognized by the federal government until the 1990s." State MSJ at 51.  The State confused the concept of "recognition" with the 1994 formal inclusion of Alaska Tribes and Native Villages on the list of *Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs* ("the List").  *See* Federally Recognized Indian Tribe List Act, Pub. L. No. 103–454, 108 Stat. 4791 (1994), 25 U.S.C. §§ 479, 479a(2). The State has wisely abandoned that argument.  The IRA "imposes no time limit upon recognition" and omission from the BIA's List is not conclusive of whether a Tribe is, was, or may in the future be "recognized."  *Carcieri v. Salazar*, 555 U.S. 379, 398 (2009) (Breyer, J., concurring).  The United States recognized the Língit and Haida long before the 1994 Act, *see*, *e.g.*, *Tlingit & Haida Indians v. United States*, 177 F. Supp. 452 (Ct. Cl. 1959), as indeed it had recognized scores of tribes across the country: "[P]rior to the late 1970's, the federal government recognized American Indian tribes on a case-by-case basis," *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1273 (9th Cir. 2004).

[19] *County of Amador v. U. S. Dep't of Interior*, 872 F.3d 1012, 1026 (9th Cir. 2017) AR0000723-26 (Solic.'s Op. M-37029, at 23-26).

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

First, it is undisputed that the Tribe was on the List when the parcel at issue was taken into trust. That is dispositive on the first condition.[20] Even if that were not the test, the United States indisputably "acknowledge[d]" that Tlingit & Haida "existed" long before the List Act was enacted. Indeed, as described in the Tribe's opening memorandum, the Língit and Haida were identified and treated as existing Tribes by the United States almost immediately after the 1867 Treaty of Cession.[21]

Second, the State does not dispute that the 1867 Treaty of Cession expressly provides that from that point onward the Tribe was "subject to such laws and regulations" of the United States that were applicable to all other Tribes.[22] The State does not dispute that very soon after the Treaty went into effect—and long before 1934—the United States recognized the Língit Kwa'an and the Haida were Southeast Alaska tribes and moved to exercise authority over them both by military force and by civil action.[23] The State similarly does not dispute the record evidence that the Government recognized its

---

[20] *See* AR0000725 (Solic.'s Op. M-37029, at 25).

[21] T&H Opening Br. at 25–26.

[22] AR0004404 (Treaty of Cession); *see In re Naturalization of Minook*, 2 Alaska 200, 220-21, 1904 WL 355, at *14 (D. Alaska 1904) (Treaty of Cession "gave the Indian tribes of Alaska the same status before the law as those of the United States, and, unless a different intention appears upon the face of the law, extends all Acts of Congress, applicable and of a general nature, relating to the Indians of the United States, to Alaska.").

[23] T&H Opening Br. at 28-29; *see generally Tlingit & Haida Indians*, 177 F. Supp. at 464.

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

obligations to provide health, education, and economic development services to the Tribe

and other Alaska Natives long before 1934.[24]

---

[24] For instance, in 1872, the Board of Indian Commissioners persuaded the President to "place the Indians of Alaska under the care of the Department of the Interior, with a view to the early commencement of measures for their education and advancement in civilization." AR0004179 (letter from F. Brunot, Chairman of the Board of Indian Commissioners, to Secretary of the Interior C. Delano (Feb. 14, 1872)). In 1873, the Attorney General opined that the War Department had authority over importation and sales of alcohol to Alaska Natives, and "any superintendent of Indian affairs, Indian agent, or subagent, or commanding officer of a military post" in Alaska had authority to search for, seize, and destroy "any spiritous liquor or wine" brought into the Territory. AR0004169-171 (letter from Geo. H. Williams to Wm. W. Belknap (Nov. 13, 1873)). In 1900, Congress declared that Alaska "shall constitute a civil and judicial district," again provided that the "Indians . . . in the district shall not be disturbed in the possession of any lands now actually in their use or occupation," and directed that the "Secretary of the Interior shall make needful and proper provision and regulations for the education of the children of school age in the district of Alaska, without reference to race . . . ." AR0003792, AR0003801 (Act of June 6, 1900, Ch. 786, §§ 1, 27-28, 31 Stat. 321, 321, 330). The Government established and maintained schools for Alaska Native children in Juneau, Sitka, and elsewhere. AR0003781 (Statement of Dr. Sheldon Jackson before the Committee on the Territories, U.S. House of Representatives, Mar. 10, 1904 ("The Bureau of Education has, since 1885, had charge of the schools of the Alaska natives. We think it has built up a system which while not perfect . . . is working successfully, which has produced good results, and which it would take any other department of the Government some years to bring to the same efficiency.")). *See also* AR0003673, AR0003661, AR0003653 (bulletins of the Bureau of Education for 1919, 1921, and 1923). By 1923, the Government was transporting federal officials and supplies to Native communities across Alaska on U.S. Navy ships, AR0004417–18, and had established orphanages at Kanakanak and Tyonek for Native children after the devasting post-war influenza epidemic, AR0003655 (1923 bulletin). By 1924, the Bureau of Education was actively providing education, instruction, and medical care for Natives across Alaska, including in Southeast: "[D]uring the fiscal year ended June 30, 1924 . . . [e]ighty-three schools [for Alaska Natives] were in operation" in Alaska, as were "hospitals at Juneau, Kanakanak [Dillingham], Akiak, Nulato, and Noorvik" for Alaska Natives, and "industrial schools" for Alaska Natives in Eklutna, Kanakanak, and White Mountain, and the government was stocking and monitoring a commercial herd of roughly 350,000 reindeer. AR0004417–20 (1925 bulletin).

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

Case 3:23-cv-00007-SLG   Document 29   Filed 02/02/24   Page 13 of 16

These facts are undisputed and, if the first sentence of Section 19 applies to this matter, establish that the Tribe was recognized and under federal jurisdiction long before the IRA and the Alaska IRA were enacted.[25]  Instead of responding to the Tribe's arguments, the State in footnotes makes general and conclusory assertions that there are "disputes of law" and a "dispute of fact" on whether the Tribe was recognized before 1934 which the State may raise "on remand."  But the State fails to identify precisely *any* actual such dispute of fact or law.[26]  Nor does the State offer any competent evidence—or any evidence at all—to support its assertion that there exists a dispute.  Where a non-moving party fails to address in its opposition brief an argument raised by the moving party, the Court may consider the unaddressed arguments waived,[27] and the Ninth Circuit rule is that arguments made only in footnotes are deemed waived.[28]  That is the case here.

Last, the State raises a new argument, *i.e.*, that Section 19 was intended to allow the Secretary to take land into trust only for "individual 'Indians' . . . not . . . for the purpose

---

[25] *County of Amador*, 872 F.3d at 1026.

[26] State Opp'n Br. at 41 nn.111 (admitting its position is contrary to *County of Amador*) & 112 (stating that "[t]he factual dispute is whether Central Council was under federal jurisdiction at the relevant time," but giving no specifics elaborating on that argument).

[27] *See, e.g., Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("'[P]laintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived.'" (quoting *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016))).

[28] *Estate of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.") (citing *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010); *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam)).

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

of providing lands for *Indian tribes*."[29]  This argument is specious.  The courts have long held that the word "Indian" in Section 19 includes tribes, not just individual Indians.[30]

In sum, the Tribe concurs fully with the Secretary's arguments on Section 19 and the Alaska IRA.  The State's opposition wanders far afield, does not respond to the Tribe's arguments or the Secretary's points, and provides no persuasive basis for its position.

## CONCLUSION

For these reasons, and for the reasons articulated in the Defendants' opening briefs and the Secretary's reply brief, the Court should grant summary judgment in favor of the Tribe and the Federal Defendants.

Respectfully submitted this 2nd day of February 2024, at Anchorage, Alaska.

SONOSKY, CHAMBERS, SACHSE
MILLER & MONKMAN, LLP


By:    */s/ Whitney A. Leonard*

Richard D. Monkman
Alaska Bar No. 8011101
Lloyd B. Miller
Alaska Bar No. 7906040
Whitney A. Leonard
Alaska Bar No. 1711064

*Attorneys for Intervenor-Defendant*

---

[29] State Opp'n Br. at 41 (emphasis in original).

[30] *County of Amador*, 872 F.3d at 1017 ("Relevant to this case, the IRA gave the Secretary of the Interior the power to take land into trust for a tribe's use.").

11

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG

Case 3:23-cv-00007-SLG   Document 29   Filed 02/02/24   Page 15 of 16

## **Certificate of Service**

I certify that on February 2nd, 2024, a copy of
the foregoing document was served via ECF on:

Jessica Moats Alloway
jessie.alloway@alaska.gov

Christopher F. Orman
christopher.orman@alaska.gov

Charmayne Staloff
charmayne.staloff@usdoj.gov

*/s/ Whitney A. Leonard*

Whitney A. Leonard

12

Tlingit & Haida's Reply in Support of Cross-Motion for Summary Judgment
*SOA v. Newland et al.*, Case No. 3:23-CV-00007-SLG