TREG TAYLOR
ATTORNEY GENERAL

Jessie M. Alloway
Christopher Orman
Assistant Attorneys General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: jessie.alloway@alaska.gov
　　　　christopher.orman@alaska.gov

Attorneys for the State of Alaska

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>　　Plaintiff,<br><br>v.<br><br>BRYAN NEWLAND, in his official capacity as Assistant Secretary, Indian Affairs, U.S. Department of the Interior; and U.S. DEPARTMENT OF THE INTERIOR,<br><br>　　Defendants, and<br><br>CENTRAL COUNCIL OF THE TLINGIT & HAIDA INDIAN TRIBES OF ALASKA,<br><br>　　Intervenor-Defendant. | Civil Action No.: 3:23-cv-00007-SLG<br><br>**STATE OF ALASKA'S SURREPLY IN FURTHER RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Alaska just experienced the second sea change regarding tribal territorial jurisdiction in recent memory. The first occurred in November 2022, when the Solicitor stated that regardless of ANCSA, the Secretary can place Alaska tribes' lands into trust and declare Indian Reservations. The second occurred just over two weeks ago when, in response to the State's arguments in this litigation, Interior issued a *new* Solicitor's Opinion that partially revoked a 31-year-old Solicitor's Opinion that concluded Alaska tribes do not have territorial jurisdiction over Alaska Native allotments. But it did not stop there. Interior also announced yet another new rule—Alaska tribes now have territorial jurisdiction over Alaska Native allotments in most circumstances.[1] That alone would be enough to get any courts attention, but there is even more. Along with announcing its new rule, Interior took on a judicial branch function and declared that a still-on-the books district court decision, *Native Village of Eklutna v. U.S. Department of the Interior*,[2] was incorrectly decided.[3]

---

[1] *See* U.S. Dep't of Interior, M-37079 ("new Solicitor's Opinion"), at 1-2, Partial Withdrawal of Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, and Clarification of Tribal Jurisdiction Over Alaska Native Allotments (Feb. 1, 2024), https://www.doi.gov/sites/default/files/documents/2024-02/m37079-partial-wd-m36975-and-clarification-trbl-jurisdiction-over-ak-native-allotments-2124.pdf.

[2] 2021 WL 4306110, at *4 (D.D.C. Sept. 22, 2021).

[3] New Solicitor's Opinion, at 15-16. The State mentions that the district court's decision in *Native Village of Eklutna* was still "on the books" given Interior's and the Tribe's continued insistence that this Court follow the *vacated* decision in *Akiachak Native Cmty. v. Salazar,* 935 F. Supp. 2d 195 (D.D.C. 2013), *vacated by Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100 (D.C. Cir. 2016). The irony of the position Interior now finds itself in is palpable.

Once again, with a stroke of its pen, Interior purportedly changed how Alaska has operated for the last 50 plus years, since the enactment of the Alaska Native Claims Settlement Act in 1971. It is not possible in a surreply to detail everything that is wrong with the new Solicitor's Opinion. Instead, the State uses this opportunity to explain how Interior's action supports the State's argument that creating Indian country *with* tribal territorial jurisdiction in Alaska is a major question and briefly addresses the merits of the Solicitor's Opinion.

## BACKGROUND

In its combined opposition and reply, the State discussed the Sansonetti Opinion, issued in 1993, and the 2021 decision in *Native Village of Eklutna* that concluded the Sansonetti Opinion "was valid in the first instance and remain[ed] so today."[4] [*See* Dkt. 25, at 28-33] It did so to address Interior's and the Tribe's claim that this case was "unremarkable" because millions of acres of restricted fee lands already existed in Alaska. [Dkt. 19, at ECF 24; Dkt. 21, at ECF 18] In contrast, both the Sansonetti Opinion and the district court had reached opposite conclusions—that is, they reviewed the Alaska Native Allotment Act and ANCSA and concluded tribes *lacked* jurisdiction over Native allotments. [*See* Dkt. 25, at 28-29] So, excluding the Annette Islands Reserve, the State argued that there was at most only 33 acres of lands over which tribes arguably had territorial jurisdiction in Alaska. [*Id.*]

---

[4] 2021 WL 4306110, at *4 (D.D.C. Sept. 22, 2021).

*State of Alaska v. Newland, et al.*  Civil Action No.: 3:23-cv-00007-SLG
State of Alaska's Surreply  Page 3 of 13

Case 3:23-cv-00007-SLG  Document 31-2  Filed 02/20/24  Page 3 of 13

Unable to dispute the State's reading of the Sansonetti Opinion and the *Native Village of Eklutna* decision, and recognizing as a result Alaska tribes have very little land base to exercise territorial jurisdiction over, Interior chose an extreme option. On February 1, 2024, a day before the Tribe's reply was due, Interior issued a new Solicitor's Opinion that revoked the relevant part of the Sansonetti Opinion and declared *Native Village of Eklutna* had been wrongly decided.[5] Now, according to this new opinion, "tribes in Alaska are presumed to have jurisdiction over Native allotments" subject to limited exceptions including (1) when the allotment is owned by a non-tribal member, or (2) when the allotment is geographically removed from the tribal community.[6] Accordingly, as decreed by Interior's Solicitor, "[u]nless one of those two exceptions applies, the presumption is unrebutted, and tribal jurisdiction over a Native Allotment is undisturbed."[7]

The Tribe relied on the new Solicitor's Opinion in its reply and Interior filed a "Notice of Supplemental Material" the next business day. [*See* Dkt. at ECF 8 n.8; Dkt. 30] With this new Solicitor's Opinion, Interior will again argue this case is "unremarkable" because Alaska tribes, excluding the Annette Islands Reserve, have territorial jurisdiction over 4 to 6 million acres of land and not just 33 acres. For these reasons, and with leave of this Court, the State files this surreply to respond.

---

[5] New Solicitor's Opinion, at 1-2, 15.

[6] *Id.*, at 2.

[7] *Id.*

# ARGUMENT

## I. The existence of tribal territorial jurisdiction in Alaska presents a major question.

In two strokes of the Solicitor's pen, Interior has purportedly changed how Alaska has operated for over 50 years. The state has supposedly gone from minimal amounts of tribal territorial jurisdiction to millions of acres overnight. It has also gone from an understanding based on 50 years of practice that no additional Indian country granting tribes territorial jurisdiction will be created without congressional action, to the Secretary now claiming nearly unlimited discretion to do the same on her own. This is all despite Congress knowing that Alaska tribes lacked territorial jurisdiction and rather than expressly granting the Secretary the authority she now claims, it created a "distinct regulatory scheme" different than any other in the country to address this issue. [*See* Dkt. 25 at 16-22]

Interior's most recent Solicitor's Opinion is also revealing in that, when convenient for its own purposes, it too recognizes that Congress should provide clear statements when addressing tribal territorial jurisdiction in Alaska. Specifically, the Solicitor's Opinion relies on the 1994 Privileges and Immunities Amendment to conclude that the agency must "insist[] on clear statutory directives to justify disparate treatment of otherwise similarly situated tribes."[8] In other words, Interior now insists that it *must*

---

[8] New Solicitor's Opinion, at 15.

change its position because it did not have a clear statutory directive for its initial position. But that is not accurate.

Even assuming Interior's application of the Privileges and Immunities Amendment is correct (it is not), Congress provided *another* "clear statutory directive" to treat Alaska tribes differently than Lower 48 tribes when it passed the Indian Land Consolidation Act Amendments of 2000.[9] Through this Act, which Congress enacted *after* the Privileges and Immunities Amendment, Congress sought to prevent the further fractionation of trust allotments made to Indians.[10] To do so, it enacted a system that encouraged the consolidation of fractional interests in a manner that enhanced tribal sovereignty, promoted tribal self-sufficiency and self-determination and reversed the effects of the allotment policy on Indian tribes.[11] But, as it did with so many other statutory schemes in this area, Congress provided clear direction that Alaska shall be treated differently.[12]

Relevant here, Congress expressly exempted Alaska from application of the Indian Land Consolidation Act Amendments.[13] It reasoned that although numerous academic and governmental organizations had studied fractioned ownership of Indian lands outside

---

[9] Pub. Law. 106-465, 114 Stat. 1991 (November 7, 2000). The State says *another* clear statutory directive because it contends ANCSA also served this function.

[10] *Id.*, § 102 (Note to 25 U.S.C. § 2201).

[11] *Id.*

[12] *See* 25 U.S.C. § 2219 (Application to Alaska).

[13] *Id.*

Alaska, the same type of work had not occurred for ownership in Alaska.[14] Without yet knowing whether there was even a problem, Congress excluded Alaska from application of the amendments.

But in exempting Alaska from the Act, Congress also took pains to ensure that nothing it did could be construed as Alaska tribes having tribal territorial jurisdiction over Native allotments in Alaska. It enacted a "rule of construction," found in 25 U.S.C. § 2219(c), that is the "clear statutory directive" that Interior now says it requires. This provision is an express recognition by Congress that tribes did not hold tribal territorial jurisdiction over allotment lands in Alaska and a clear statement that Congress sought to maintain that status quo.[15] Specifically, the provision reads:

> Nothing in this section shall be construed to constitute a ratification of any determination by any agency, instrumentality, or court of the United States that may support the assertion of tribal jurisdiction over allotment lands or interests in such land in Alaska.[16]

Even after Congress amended the Indian Reorganization Act in 1994 to include the Privileges and Immunities clause, Congress with 25 U.S.C. § 2219(c) recognized that Alaska was unique, and that Alaska tribes did not have lands it exercised territorial jurisdiction over like Lower 48 tribes.

---

[14] 25 U.S.C. § 2219(a).

[15] *Id.* § 2219(c).

[16] *Id.*

*State of Alaska v. Newland, et al.*  Civil Action No.: 3:23-cv-00007-SLG
State of Alaska's Surreply  Page 7 of 13

The new Solicitor's Opinion fails to cite or even discuss 25 U.S.C. § 2219(c). If that provision does not nullify the new opinion, it at least demonstrates that Congress provided a "clear congressional directive" that Alaska Native allotments are different than Lower 48 Native allotments. What is more, it completely negates Interior's attempt to undermine the State's argument that the Secretary's authority to take lands into trust in Alaska presents a major question. On multiple occasions, Congress has had an opportunity to do what the Secretary is now trying to accomplish, and on each of those occasions, Congress has held steadfast—the system that exists in the Lower 48 cannot be and should not be applied in Alaska.

## II. The new Solicitor's Opinion is wrong on the merits.

### A. The Solicitor does not have the authority to declare a federal district court opinion was wrongly decided.

Faced with a federal district court decision that contradicted Interior's newly found legal position, the Solicitor does something remarkable. He steps beyond his authority as an executive branch employee to exercise the power reserved by the constitution to the courts and declares a federal district court decision was wrongly decided.[17] Specifically, the district court held "Sansonetti's interpretation of the Alaska Native Allotment Act was correct."[18] The Solicitor disagreed, saying the Sansonetti Opinion's interpretation of the Alaska Native Allotment Act was "neither compelled by

---

17  New Solicitor's Opinion, at 16.

18  2021 WL 4306110, at *6.

State of Alaska v. Newland, et al.    Civil Action No.: 3:23-cv-00007-SLG
State of Alaska's Surreply    Page 8 of 13

Case 3:23-cv-00007-SLG   Document 31-2   Filed 02/20/24   Page 8 of 13

the text of the [Act] nor by any indication of congressional intent."[19] The district court also rejected Eklutna's argument that the Privileges and Immunities Amendment somehow called into question the Sansonetti Opinion, recognizing that the Amendment "require[d] only that Interior apply the same legal rule in the same manner" and Sansonetti did that by "applying the general legal test for Indian tribal territorial jurisdiction to the unique factual and legal circumstances in Alaska."[20] But the Solicitor also disagreed with the district court on that point, "conclude[ing] that the *Eklutna* court erred in both its reasoning and its ultimate conclusion."[21] Not only was the court's analysis of the Privileges and Immunities Amendment wrong, in the Solicitor's opinion, the "district court [] erred in applying a standard of arbitrariness to reach its conclusion."[22]

The Solicitor's approach to this situation is backwards. Federal district court decisions are binding on federal agencies, and it is the federal courts that get to review federal agency interpretations.[23] Interior does not, as the Solicitor attempts to do here, get to review federal district court decisions to decide whether they are persuasive

---

[19] New Solicitor's Opinion, at 2

[20] 2021 WL 4306110, at *7.

[21] *Id.*

[22] *Id.*

[23] *See* U.S. Const. article III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").

interpretations of the law such that they will be followed by the agency. The Solicitor's Opinion turns our normal system of judicial review on its head.

What makes the Solicitor's position even more problematic is that the agency he serves—the U.S. Department of the Interior—was a named party in the *Native Village of Eklutna* litigation and the district court adopted the agency's position.[24] If anything, the federal government would be judicially estopped from arguing in this case or even a future case, a position that is contrary to what it argued in the *Eklutna* litigation.[25]

One last point on this topic. The Solicitor's decision to "overrule" *Native Village of Eklutna* or at least to find that he was not bound by it because it was not persuasive enough, occurred even though the Tribe in that case, the Native Village of Eklutna, did not appeal the district court's decision.[26] Notably, the same law firm that represents

---

[24] *See* Federal Defendants' Memorandum in Opp'n to Plaintiff's Mot. for Summ. J. and ISO Cross-Motion, *Native Village of Eklutna v. U.S. Dep't of the Interior*, 1:19-cv-02388-DLF (D.D.C.), Dkt. 55-1.

[25] *United States v. Paulson*, 68 F.4th 528, 547 (9th Cir. 2023), *cert. petition pending* (recognizing that judicial estoppel can apply to the federal government and stating the non-exclusive factors as (1) the party's later position is clearly inconsistent with its earlier position; (2) the party succeeded in persuading the court to accept earlier position such that judicial acceptance of an inconsistent position would create "the perception that either the first or the second court was misled," and (3) the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped (internal quotation marks omitted)); *see also Cuyahoga Metropolitan Housing Auth. v. U.S.*, 65 Fed. Cl. 534, 554-55 n. 23 (Fed. Cl. 2005) (discussing cases that address whether judicial estoppel applies to the federal government).

[26] The same is true for Tlingit and Haida, who chose not to appeal the unfavorable administrative decision it received from the National Indian Gaming Commission even though that decision followed in near lock step with the federal district court decision in *Native Village of Eklutna*. In the Matter of: Appeal of Chairman's August 19, 2020

Tlingit and Haida in this litigation represented the Native Village of Eklutna in that litigation.[27]

### B. The federal government correctly recognized in the *Eklutna* litigation that Congress has consistently treated Alaska differently.

The State encourages the Court to read Interior's briefing in the *Native Village of Eklutna* litigation.[28] The State does not represent that it endorses all representations made by Interior, but for purposes of this litigation, that brief adequately sets out an opposing view to the new Solicitor Opinion.

One big difference between the two positions is the agency's willingness to recognize that "Alaska is different." The new Solicitor's Opinion claims that the "text of the [Alaska Native Allotment Act] and its legislative history make clear that Congress intended allotments issued under [it] to be treated similarly to those issued under the

---

Disapproval of Amendment to Gaming Ordinance of the Central Council of Tlingit and Haida Indian Tribes of Alaska, Final Decision and Order, February 25, 2021 (NIGC Decision), available at: https://www.nigc.gov/images/uploads/final-decisions/NIGCCommissionDecisionCCTHITA2252021.pdf (accessed on February 20, 2024).

[27] Given the date of the district court's decision, September 22, 2021, it is possible that the Native Village of Eklutna chose not to appeal because it believed it was more likely to obtain relief from the new Biden administration than it was from the District of Columbia Court of Appeals and that an unfavorable decision from the circuit court would do even more to impede the federal administration's ability to rewrite federal law than a district court decision that the Solicitor apparently believes he can ignore.

[28] *See* Federal Defendants' Memorandum in Opp'n to Plaintiff's Mot. for Summ. J. and ISO Cross-Motion, *Native Village of Eklutna v. U.S. Dep't of the Interior*, 1:19-cv-02388-DLF (D.D.C.), Dkt. 55-1 ("Interior's *Eklutna* Br.").

General Allotment Act."[29] In *Eklutna*, however, Interior properly recognized that "[t]ribal jurisdiction over land in Alaska is unique, including with respect to allotments held individually by those who may be members of an Alaska tribe."[30] That is because, Interior conceded, "Congress has frequently legislated in Indian affairs on an Alaska-specific basis" including through the 1906 Alaska Native Allotment Act and ANCSA.[31]

All told, this Court does not need to decide whether the new Solicitor's Opinion is right or wrong to resolve the question at issue in this litigation. It is enough for the Court to see Interior's action for what it is—an extreme example of an agency trying to course correct after being reminded, correctly, that its longstanding position (and the one approved by the federal courts) contradicted its current litigation position.

## CONCLUSION

Trying to equate tribal territorial jurisdiction in Alaska to tribal territorial jurisdiction in the Lower 48 is like trying to fit a square peg into a round hole. And Congress has always recognized as much. They are different because Congress, in exercising its plenary authority over Indian affairs, made them different. The harder Interior tries to make its policy changes work, the more evident it becomes that this is a major question that only Congress has the authority to address.[32]

---

[29]  New Solicitor's Opinion, at 2.

[30]  Interior's *Eklutna* Br., at 4.

[31]  *Id.*

[32]  *See West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (explaining that the major question doctrine applies when the agency "discovers" a new power and that "discovery

DATED: February 20, 2024.

        TREG TAYLOR
        ATTORNEY GENERAL

By:   */s/ Jessie M. Alloway*
      Jessica M. Alloway
      Assistant Attorney General
      Alaska Bar No. 1205045
      Email: jessie.alloway@alaska.gov

By:   */s/ Christopher F. Orman*
      Christopher F. Orman
      Assistant Attorney General
      Alaska Bar No. 1011099
      Email: christopher.orman@alaska.gov

*Attorneys for the State of Alaska*

**CERTIFICATE OF SERVICE**
I hereby certify that on February 20, 2024, I electronically filed the foregoing by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Angela Hobbs
Angela Hobbs
Law Office Assistant III

**CERTIFICATE OF WORD COUNT**
I certify that this document contains 2,829 words.

---

allowed it to adopt a regulatory program that Congress had conspicuously and repeatedly declined to enact itself").

*State of Alaska v. Newland, et al.*         Civil Action No.: 3:23-cv-00007-SLG
State of Alaska's Surreply         Page 13 of 13