## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

               Plaintiff,

      v.

BRYAN NEWLAND, in his official
capacity as Assistant Secretary, Indian
Affairs, U.S. Department of the Interior,
*et al.*,

             Defendants,

       and

CENTRAL COUNCIL OF TLINGIT &
HAIDA INDIAN TRIBES OF ALASKA,

            Intervenor-Defendant.

Case No. 3:23-cv-00007-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court at Docket 16 is Plaintiff State of Alaska's ("State") Motion for Summary Judgment. At Docket 19 is Federal Defendants' Cross-Motion for Summary Judgment and Response in Opposition to the State's Motion for Summary Judgment.[1] At Docket 21 is Intervenor-Defendant Central Council of Tlingit & Haida Indian Tribes of Alaska's ("Tlingit & Haida" or "Tribe") Cross-Motion for Summary Judgment and Response in Opposition to the State's Motion for

---

[1] Federal Defendants consist of Bryan Newland, in his official capacity as Assistant Secretary, Indian Affairs, U.S. Department of the Interior, and the U.S. Department of the Interior ("DOI").

Summary Judgment. The State filed a Combined Response in Opposition to Cross-Motions for Summary Judgment and Reply in Support of Motion for Summary Judgment at Docket 25. Federal Defendants filed a Reply in Support of Cross-Motion for Summary Judgment at Docket 28, and Tlingit & Haida filed a Reply in Support of Cross-Motion for Summary Judgment at Docket 29. The State was authorized to file a surreply, which is at Docket 31-2.[2]

Oral argument was held on May 6, 2024.[3]

## BACKGROUND

This case asks whether the Secretary of the U.S. Department of the Interior ("DOI" or "Interior") has the authority to take land into trust in the state of Alaska for Alaska Natives after the enactment of the Alaska Native Claims Settlement Act of 1971.[4] The Court begins its analysis with an overview of the relevant statutes followed by a brief history of the issue and a summary of the facts at hand.

---

[2] *See* Docket 41. In addition, the Craig Tribal Association and the Organized Village of Kake filed an amici curiae brief at Docket 23 in support of Tlingit & Haida's Cross-Motion for Summary Judgment. The United States also filed a Notice of Supplemental Material at Docket 30, which noted that a new 2024 DOI Solicitor Opinion partially withdrew a previous Solicitor Opinion that had concluded there was no tribal jurisdiction over Alaska Native allotments. *See* U.S. Dep't of the Interior, Opinion M-37079, *Partial Withdrawal of Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, and Clarification of Tribal Jurisdiction Over Alaska Native Allotments* (Feb. 1, 2024), https://perma.cc/4Z3D-KHPY.

[3] *See* Docket 47.

[4] "Land into trust" is "the transfer of land title from an individual Indian or federally-recognized Tribe to the United States, in trust, for the benefit of that individual Indian or Tribe." U.S. Dep't of the Interior, Indian Affs., *Fee to Trust Land Acquisitions*, https://www.bia.gov/bia/ots/fee-to-trust (last visited Mar. 12, 2024). This process is also known as a fee to trust land acquisition. "'Fee simple' status means the landowner may freely alienate or encumber the land (for example: selling, gifting, or leasing the land) without federal approval." *Id.*

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 2 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 2 of 39

## I.  Relevant Statutes

The following four federal statutes are of most relevance to this case: (1) the Indian Reorganization Act of 1934; (2) the Alaska Indian Reorganization Act of 1936; (3) the Alaska Native Claims Settlement Act of 1971; and (4) the Federal Land Policy and Management Act of 1976.

In 1934, Congress enacted the Indian Reorganization Act ("IRA"); § 5 of the IRA authorizes the Secretary of the Interior to take land into trust "for the purpose of providing land for Indians."[5]  Section 5 also provides that "[t]itle to any lands . . . acquired pursuant to this Act shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired."[6]  Section 19 of the IRA defines "Indian" to include (1) "all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction," (2) "all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation," and (3) "all other persons of one-half or more Indian blood."[7]  Section 19 further provides that, "[f]or the purposes of this Act, Eskimos and other aboriginal peoples of Alaska shall be considered Indians."[8]  Section 19 then defines "tribe" as used in the IRA "to refer

---

[5] Pub. L. No. 73–383, § 5, 48 Stat. 984, 985 (1934) [hereinafter "IRA"] (codified at 25 U.S.C. § 5108).

[6] *Id.*

[7] *Id.* § 19 (codified at 25 U.S.C. § 5129).

[8] *Id.*

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 3 of 39

to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation."[9]  At the time of its enactment, the IRA was not applicable "to any of the Territories, colonies, or insular possessions of the United States, except that sections 9, 10, 11, 12, and 16, [applied] to the Territory of Alaska."[10]  This meant that, in 1934, the Secretary had no authority pursuant to IRA § 5 to take lands into trust in Alaska, which was a territory at that time.  Also relevant here, in 1994, Congress amended § 16 of the IRA by adding a Privileges and Immunities Clause, codified at 25 U.S.C. § 5123(g), which provides:

> Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on May 31, 1994, and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.[11]

In 1936, two years after the enactment of the IRA, Congress enacted what is commonly referred to as the Alaska Indian Reorganization Act ("Alaska IRA").[12]

---

[9] *Id.*

[10] *Id.* § 13 (codified at 25 U.S.C. § 5118).

[11] 25 U.S.C. § 5123(g); Act of May 31, 1994, Pub. L. No. 103-263, § 5, 108 Stat. 707, 709 (making certain technical corrections).

[12] Act of May 1, 1936, Pub. L. No. 74-538, 49 Stat. 1250 (1936) [hereinafter "Alaska IRA"]. Alaska IRA § 1 is codified at 25 U.S.C. § 5119, which contains the following proviso: "*Provided*, That groups of Indians in Alaska not recognized prior to May 1, 1936, as bands or tribes, but having a common bond of occupation, or association, or residence within a well-defined neighborhood, community, or rural district, may organize to adopt constitutions and bylaws and to receive charters of incorporation and Federal loans . . . ."  Alaska IRA § 2 was later rescinded. *See* discussion *infra* p. 7.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 4 of 39
Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 4 of 39

The Alaska IRA contained only two sections: § 1 extended certain parts of the IRA to the Territory of Alaska, including IRA §§ 5 and 19; and § 2 authorized the Secretary to designate public lands in Alaska as reservations.[13]  Thus, beginning in 1936, the Secretary could take land into trust in Alaska for Indians pursuant to IRA § 5, which applied to Alaska through Alaska IRA § 1.

In 1959, Alaska became a state.  And in 1971, Congress enacted the Alaska Native Claims Settlement Act ("ANCSA"),[14] "a comprehensive statute designed to settle all land claims by Alaska Natives."[15]  "In enacting ANCSA, Congress sought to end the sort of federal supervision over Indian affairs that had previously marked federal Indian policy."[16]  In ANCSA's statement of purpose, Congress declared its intention that

> the settlement [of the land claims] should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or

---

[13] In this context, "public lands" refers to federal lands.  The Property Clause authorizes Congress to make needed rules and regulations regarding public lands.  *See* U.S. Const. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.").

[14] Pub. L. No. 92-203, 85 Stat. 688 (1971) [hereinafter "ANCSA"] (codified at 43 U.S.C. § 1601 *et seq.*).

[15] *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 523 (1998) [hereinafter *Venetie*] (citing 43 U.S.C. § 1601).

[16] *Id.* at 523-24.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 5 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 5 of 39

obligations, [and] without creating a reservation system or lengthy wardship or trusteeship . . . .[17]

"To this end, ANCSA revoked 'the various reserves set aside . . . for Native use' by legislative or Executive action, except for the Annette Island Reserve inhabited by the Metlakatla Indians, and completely extinguished all aboriginal claims to Alaska land."[18] As to aboriginal title and claims, ANCSA provides that

> All aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy . . . are hereby extinguished.
>
> . . .
>
> All claims against the United States, the State, and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska, or that are based on any statute or treaty of the United States relating to Native use and occupancy . . . are hereby extinguished.[19]

"In return, Congress authorized the transfer of $962.5 million in state and federal funds and approximately 44 million acres of Alaska land to state-chartered private business corporations that were to be formed pursuant to the statute; all of the shareholders of these corporations were required to be Alaska Natives."[20] "The

---

[17] 43 U.S.C. § 1601(b).

[18] *Venetie*, 522 U.S. at 524 (first quoting 43 U.S.C. § 1618(a); and then citing 43 U.S.C. § 1603).

[19] 43 U.S.C. § 1603(b), (c). For purposes of ANCSA, "Native" is defined to mean "a citizen of the United States who is a person of one-fourth degree or more Alaska Indian (including Tsimshian Indians not enrolled in the Metlaktla [sic] Indian Community) Eskimo, or Aleut blood, or combination thereof." 43 U.S.C. § 1602(b).

[20] *Venetie*, 522 U.S. at 524 (citing 43 U.S.C. §§ 1605, 1607, 1613).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 6 of 39
Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 6 of 39

ANCSA corporations received title to the transferred land in fee simple, and no federal restrictions applied to subsequent land transfers by them."[21]

Then, in 1976, Congress enacted the Federal Land Policy and Management Act ("FLPMA").[22]  As relevant to this case, FLPMA repealed Alaska IRA § 2, which authorized the Secretary to establish reservations in Alaska; but it did not repeal Alaska IRA § 1, which made the Secretary's trust acquisition authority in IRA § 5 applicable to Alaska, among other provisions.[23]

## II.    History of Land-into-Trust Authority in Alaska

"In the years after [ANCSA], the question arose whether the Secretary's land-into-trust authority had survived ANCSA and FLPMA, or whether one or both of those statutes had withdrawn a portion of that power."[24]  DOI, for its part, has taken varying positions on the issue from 1978 until the present.  In 1978, the Associate Solicitor for Indian Affairs issued an opinion letter concluding that,

> [i]n view of the clear legislative intent and policy expressed in ANCSA's extensive legislative history, it would . . . be an abuse of the Secretary's discretion to attempt to use Section 5 of the IRA (which, along with §§ 1, 7, 8, 15, and 17 of the IRA still apply to Alaska

---

[21] *Id.*

[22] Pub. L. No. 94-579, 90 Stat. 2743 (1976) [hereinafter "FLPMA"] (codified at 43 U.S.C. § 1701 *et seq.*).

[23] *See id.* § 704(a), 90 Stat. at 2792 (repealing Section 2 of the Act of May 1, 1936, which is the Alaska IRA).

[24] *Akiachak Native Cmty. v. Salazar*, 935 F. Supp. 2d 195, 200 (D.D.C.), *on reconsideration in part sub nom. Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 1 (D.D.C. 2013), *vacated as moot sub nom. Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 827 F.3d 100 (D.C. Cir. 2016).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 7 of 39

pursuant to the unrepealed portion of the [Alaska IRA]) to restore the former Venetie Reserve to trust status.[25]

In conformity with that opinion, the Secretary promulgated land-into-trust regulations in 1980 that specifically excepted Alaska, providing that "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or it[s] members."[26]  This "Alaska exception" was then challenged in 1994 by three Alaska Native tribes that petitioned the Secretary to revise the regulations so as to allow the Secretary to take lands into trust for all federally recognized Alaska Native tribes.[27]

In response to that petition, in 1999, the Secretary issued a Proposed Rule that recognized "a credible legal argument that ANCSA did not supersede the Secretary's authority to take land into trust in Alaska under the IRA," but nonetheless noted that "[t]he proposed regulations would make no change in the current regulations and would continue the bar against taking Native land in Alaska in trust."[28]  Then, in 2001, the DOI Solicitor rescinded the 1978 Associate Solicitor Opinion, explaining that "there is substantial doubt about the validity of the

---

[25] AR0001526 (1978 Associate Solicitor Opinion).  Cites to the "AR" refer to the Administrative Record, which was filed conventionally. *See* Docket 14.

[26] Land Acquisitions, 45 Fed. Reg. 62034, 62036 (Sept. 18, 1980).  The current regulations are codified at 25 C.F.R. Part 151.

[27] *Akiachak*, 935 F. Supp. 2d at 201 (citation omitted).

[28] Acquisition of Title to Land in Trust, 64 Fed. Reg. 17574-01, 17578 (Apr. 12, 1999).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 8 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 8 of 39

conclusion reached in the 1978 Opinion," which "gave little weight to the fact that Congress had not repealed section 5 of the IRA, which is the generic authority by which the Secretary takes Indian land into trust, and which Congress expressly extended to Alaska in 1936."[29]  On the same day, the Secretary promulgated the Final Rule.[30]  While the Secretary recognized the Solicitor's recent rescission of the 1978 land-into-trust opinion in the 2001 Final Rule, DOI "decided in its sound discretion to continue in place the bar against taking Native land in Alaska into trust."[31]  The Secretary explained that "the position of the Department has long been, as a matter of law and policy, that Alaska Native lands ought not to be taken in trust," and that the prohibition would "remain in place for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust."[32]  But later that same year, the Secretary withdrew the Final Rule and left the original 1980 land-into-trust regulations—which prohibited the Secretary from taking Alaska lands into trust, except for the Metlakatla Indian Community—in effect.[33]

---

[29] AR0000887-88 (2001 Solicitor Opinion).

[30] Acquisition of Title to Land in Trust, 66 Fed. Reg. 3452-01 (Jan. 16, 2001).

[31] 66 Fed. Reg. at 3454; AR0000888.

[32] 66 Fed. Reg. at 3454.

[33] *See* Acquisition of Title to Land in Trust, 66 Fed. Reg. 56608-01, 56608, 56610 (Nov. 9, 2001) (noting delays of the effective date of the Final Rule and "allow[ing] for the current 25 CFR Part 151 [which was promulgated in 1980] to remain in effect during the pendency of the

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 9 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 9 of 39

Four Alaska Native tribes and one Alaska Native individual then brought suit in the U.S. District Court for the District of Columbia "challeng[ing] the Secretary of the Interior's decision to leave in place a regulation that treats Alaska Natives differently from other native peoples"; the State of Alaska intervened as a defendant.[34] In that case, *Akiachak Native Community v. Salazar*, the D.C. district court examined the same fundamental question at issue in the instant case—that is, "whether the Secretary still possesses the statutory authority to take land into trust for the benefit of Alaska Natives outside of Metlakatla" following the enactment of ANCSA and FLPMA's repeal of § 2 of the Alaska IRA, which had conferred on the Secretary the authority to create reservations from public lands in Alaska.[35] The *Akiachak* court first held that, "unlike some other claims settlement acts, ANCSA did not explicitly revoke the Secretary's land-into-trust authority."[36] The court noted that, "[a]fter many ambiguous pronouncements and years of internal debate, the Secretary now agrees" with the *Akiachak* plaintiffs that ANCSA and FLPMA did not remove the Secretary's authority to take lands into

_____

development of a new rulemaking addressing this matter").

[34] *Akiachak*, 935 F. Supp. 2d at 197.

[35] *Id.* at 203; *see also* Alaska IRA § 2.

[36] *Akiachak*, 935 F. Supp. 2d at 203 (citing Maine Indian Claims Settlement Act of 1980, Pub. L. No. 96-420, § 5(e), 94 Stat. 1785, 1791 ("Except for the provisions of this subchapter, the United States shall have no other authority to acquire lands or natural resources in trust for the benefit of Indians or Indian nations, or tribes, or bands of Indians in the State of Maine.")).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 10 of 39

trust in Alaska, even though the Secretary left in place the regulations prohibiting such action.[37]

The State in *Akiachak* argued, as it does here, that ANCSA implicitly repealed the Secretary's land into trust authority in Alaska.[38] In support of its position, the State asserted that ANCSA extinguished "[a]ll claims against the United States, the State [of Alaska], and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land . . . or that are based on any statute or treaty of the United States relating to Native use and occupancy."[39] The State further contended that the Secretary's supposed land-into-trust authority in Alaska would contradict ANCSA's declaration of congressional purpose, which provided that "the settlement should be accomplished . . . without creating a . . . lengthy . . . trusteeship."[40]

However, the *Akiachak* court held that, while ANCSA extinguished "[a]ll claims against the United States, the State [of Alaska], and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land," "petitions to have land taken into trust are not 'claims,' because to grant or deny those

---

[37] *Id.* (citations omitted).

[38] *See id.* at 204; Docket 53 at 5 (Tr. Oral Arg.) (the State asserting that "if the Court disagrees with [the State] on the major questions doctrine then [the State] still think[s] [the Court] has to answer whether there was an implied repeal"). *See also infra* note 97.

[39] *Akiachak*, 935 F. Supp. 2d at 204-05 (quoting 43 U.S.C. § 1603(c)).

[40] *Id.* at 206 (quoting 43 U.S.C. § 1601(b)).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 11 of 39

Case 3:23-cv-00007-SLG    Document 54    Filed 06/26/24    Page 11 of 39

petitions is within the discretion of the Secretary, and a 'claim' is necessarily an assertion of right."[41]  The *Akiachak* court further held that ANCSA's declaration of congressional purpose did not implicitly repeal the Secretary's authority, because "the terms of the settlement are 'capable of co-existence' with the power to take Alaska land into trust."[42]  The court noted that although "[t]here may be a tension between ANCSA's elimination of most trust property in Alaska and the Secretary's authority to create new trust land, . . . [that] tension is not an 'irreconcilable conflict,'" because "[i]t is perfectly possible for land claims to be settled by transferring land and money to tribal corporations, while the Secretary retains the discretion—but not the obligation—to take additional lands (or, perhaps, those same transferred lands) into trust."[43]  Accordingly, the court concluded that "ANCSA left intact the Secretary's authority to take land into trust throughout Alaska."[44]  As a result, the court invalidated the Alaska exception in the land-into-trust regulations because it "diminishe[d] the privileges of non-Metlakatlan Alaska

---

[41] *Id.* at 204-05 (quoting 43 U.S.C. § 1603(c)) (other citations omitted).  The court also noted that "the State's position would require the court to conclude that ANCSA eliminated the Secretary's authority to take land in trust for the benefit of Metlakatla Indians . . . [such that] Metlakatlans [would be] barred from submitting such petitions.  But not even the State believes that that is true."  *Id.* at 205 (citation omitted).

[42] *Id.* at 206-07 (quoting *Traynor v. Turnage*, 485 U.S. 535, 548 (1988)).

[43] *Id.* at 207 (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003)).

[44] *Id.* at 208.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 12 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 12 of 39

Natives relative to all other Indian tribes" in violation of 25 U.S.C. § 5123(g), the IRA Privileges and Immunities Clause.[45]

While the State's and DOI's appeals of the *Akiachak* decision were pending, DOI promulgated a new rule in 2014 removing the Alaska exception from its land-into-trust regulations, thereby allowing the Secretary to acquire land into trust in Alaska.[46] Citing *Akiachak*, DOI noted that "[a] number of recent developments . . . caused the Department to look carefully at this issue again," and it concluded that "the Secretary's discretionary authority to take land into trust in Alaska under Section 5 of the IRA . . . was never extinguished."[47] "After Interior issued the proposed rule suggesting the elimination of the Alaska exception, [Interior] voluntarily dismissed its appeal."[48] "After the new rule became final, Interior filed a . . . motion seeking to dismiss Alaska's appeal as moot, arguing that '[t]he district court's judgment has now been overtaken by Interior's administrative action to

---

[45] *See id.* at 210-11 (noting that the Secretary had argued that the Alaska exception was valid); *Akiachak*, 995 F. Supp. 2d at 4-5, 7 (vacating the Alaska exception and, on reconsideration, explaining that the court's holding with regard to 25 U.S.C. § 5123 "was simply that 1) by its plain text the provision does more than prohibit the Secretary from distinguishing between 'historic' and 'created' tribes under Section 16 . . . ; 2) there is no requirement that tribes be 'similarly situated' for the anti-discrimination provision to apply; and 3) the Secretary ha[d] waived any other argument that the right to submit a land-into-trust petition is a not privilege within the meaning of [25 U.S.C. § 5123(g)]"). 25 U.S.C. § 5123 was formerly cited as 25 U.S.C. § 476.

[46] *See Akiachak Native Cmty.*, 827 F.3d at 104-05; Land Acquisitions in the State of Alaska, 79 Fed. Reg. 76888-02, 76889 (Dec. 23, 2014).

[47] 79 Fed. Reg. at 76889-90.

[48] *Akiachak*, 827 F.3d at 105.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 13 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 13 of 39

delete the regulatory language challenged in the complaint.'"[49] The D.C. Circuit Court agreed with DOI and concluded that, "once the Department of Interior rescinded the Alaska exception, this case became moot."[50] The Circuit Court thus vacated the district court's decision, explaining that because the State was "prevented from appealing the district court's decision for reasons outside its control, vacatur is appropriate to 'clear[] the path for future relitigation of the issues . . . and eliminate[] a judgment, review of which was prevented through happenstance.'"[51]

Following the D.C. Circuit Court's 2016 decision to vacate *Akiachak*, DOI issued multiple Solicitor Opinions that vacillated on whether the Secretary had the authority to take lands in Alaska into trust. A 2017 Solicitor Opinion concluded that the Secretary did have the authority pursuant to IRA § 5,[52] and that same year DOI granted a petition by an Alaska tribe to take lands into trust.[53] A 2018 Solicitor Opinion temporarily withdrew the 2017 opinion pending review of the land-into-trust process.[54] A January 2021 Solicitor Opinion permanently withdrew the 2017

---

[49] *Id.* (alteration in original) (citation omitted).

[50] *Id.* at 113.

[51] *Id.* at 115 (alterations in original) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)).

[52] AR0000399-420.

[53] AR0000421-33.

[54] AR0000274-78.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 14 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 14 of 39

opinion, concluding that "uncertainty . . . caution[s] against the Secretary implementing IRA section 5 in Alaska" and that "the legal analysis contained in [the 2017 opinion] is insufficient to support its determination that the Secretary has authority to accept land in trust in Alaska pursuant to section 5 of the [IRA]"; the January 2021 opinion further concluded that "the Department should not accept in trust any lands in Alaska" until issues concerning the scope of the Secretary's statutory authority "are addressed and resolved."[55] But an April 2021 Solicitor Opinion by a different Solicitor withdrew the January 2021 opinion.[56] And a 2022 Solicitor Opinion concluded that the Secretary has the statutory authority to accept land in trust for Alaska Natives and Alaska tribes.[57]

### III. Tlingit & Haida's Application for Land into Trust

In November 2022, shortly before this suit's inception, the DOI Assistant Secretary of Indian Affairs ("Assistant Secretary") approved Intervenor-Defendant Tlingit & Haida's application for DOI to accept a parcel of land in Juneau, Alaska (the "Parcel"), into trust pursuant to IRA § 5.[58] The Parcel is 787 square feet, currently used "as an overflow parking area for [the Tribe's] employees and guests

---

[55] AR0000219, AR0000185-86.

[56] AR0000182-83.

[57] AR0000032-67.

[58] AR0000001. The most recent Solicitor Opinion on whether the Secretary has the authority to take lands in Alaska into trust was issued on November 16, 2022, and the Assistant Secretary approved Tlingit & Haida's application to transfer land into trust one day later, on November 17, 2022. *See* AR0000001, AR0000032.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 15 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 15 of 39

of its tribal offices and programs," and will continue to be used for that purpose.[59] The Parcel "is surrounded by restricted Native lands and lands held in fee status by members of the Tribe."[60] Tlingit & Haida, a federally recognized tribe,[61] purchased the Parcel in fee simple in 2007 "from the estate of a tribal member whose family had owned the Property for decades."[62] The Tribe originally applied to have DOI make the fee to trust land acquisition in 2009.[63] The Assistant Secretary noted that, among other benefits, having land in trust will "facilitate tribal self-determination" and make Tlingit & Haida eligible for "federal funding and grants only available for trust lands."[64]

In reviewing Tlingit & Haida's application, the Assistant Secretary analyzed the request under the land-into-trust regulations contained in 25 C.F.R. Part 151

---

[59] AR0000004, AR0000006.

[60] AR0000011.

[61] AR0000001. Because Tlingit & Haida is considered one tribe, this order refers to Tlingit & Haida in the singular. *See* Docket 21 at 11 ("Tlingit & Haida is a State-recognized and federally-recognized Tribe comprised of the two indigenous peoples of Southeast Alaska, the Lingít and the Haida.").

[62] AR0000011.

[63] AR0000001. "Following the issuance of the new rule [that eliminated the Alaska Exception], [Tlingit & Haida] resubmitted its application for the Parcel . . . on February 5, 2016." AR0000002. A fee to trust land acquisition is also known as "land into trust." *See supra* note 4.

[64] AR0000005, AR0000012. The President of Tlingit & Haida explained that the "Tribal Assembly specifically resolved many years ago to buy back the land in the Áak'w Village [in Juneau, Alaska], to preserve and protect it for our people. As the saying goes, we look ahead seven generations when making important decisions. In seven generations, we hope our descendants will talk about how their ancestors—our generation—protected this land for them." Docket 6-1 at ¶¶ 1, 3, 8.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 16 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 16 of 39

and found that "all applicable legal requirements [were] satisfied."[65]   The requirements include an examination of the statutory authority to acquire the land in trust, the purpose for which the land will be used, impact on state or local tax revenues, jurisdictional problems and potential land use conflicts, environmental compliance, and the location of the land.[66]   The Assistant Secretary found that the Parcel met the requirement of 25 C.F.R. § 151.3(a)(2), which provides that "land may be acquired for a tribe in trust status . . . [w]hen the tribe already owns an interest in the land."[67]   Additionally, as part of his analysis on the location of the land pursuant to 25 C.F.R. § 151.11(b),[68] the Assistant Secretary noted that "the Tribe does not have a reservation" because "ANCSA revoked the various reserves that had been set aside for Alaska Native groups or for the administration of Native affairs."[69]   However, he stated that the Tribe does "have recognized traditional homelands" and that the "Tribe's ancestors used areas in and around Southeast Alaska, including the area now known as Juneau, as their traditional and cultural

---

[65] AR0000004-17.

[66] AR0000005-13 (citing 25 C.F.R. §§ 151.10(a), (c), (e), (f), (h), 151.11(b) (2022)).  Note that the Assistant Secretary's decision, which was issued in 2022, examined the 2022 version of the regulations at 25 C.F.R. Part 151, which was then updated in January 2024.

[67] AR0000004-05.

[68] The 2022 version of 25 C.F.R. § 151.11(b) provides that, "as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition" and "give greater weight to the concerns raised" by the state and local governments having regulatory jurisdiction over the land to be acquired in trust.  *See also* AR0000011.

[69] AR0000011.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 17 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 17 of 39

homeland since time immemorial."[70]  The Assistant Secretary concluded that "[t]he anticipated benefits of acquiring the Parcel into trust include restoration of Indian lands and increased self-determination."[71]  He also concluded that there would be "no adverse jurisdictional problems or potential conflicts of land use . . . aris[ing] from the acquisition of the [Parcel] into trust on behalf of [the Tribe]."[72]  Thus, having found all federal regulatory requirements met, the Assistant Secretary approved the trust acquisition, noting that the decision constituted a final agency action pursuant to 5 U.S.C. § 704.[73]

The Assistant Secretary further noted that Tlingit & Haida had requested that "the Secretary issue a reservation proclamation for all of the land [the Tribe] seeks to have acquired in trust . . . and to designate it [as] the Tribe's initial reservation" pursuant to IRA § 7.[74]  Observing that the State and the City and Borough of Juneau had expressed concern about this request, the Assistant Secretary remarked that "[t]his concern . . . is misplaced" because "[a] reservation proclamation is simply an administrative function that allows tribes to take

---

[70] AR0000011.

[71] AR0000012.

[72] AR0000009.

[73] AR0000017.

[74] AR0000012.  IRA § 7, codified at 25 U.S.C. § 5110, authorizes the Secretary "to proclaim new Indian reservations on lands acquired pursuant to [the IRA]" or to add lands to existing reservations.  IRA § 7 was made applicable to Alaska by Alaska IRA § 1, codified at 25 U.S.C. § 5119.  *See supra* Background Section I.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 18 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 18 of 39

advantage of special federal assistance programs."[75]  The Assistant Secretary noted that, because the information and documentation submitted in a fee to trust application is the same that is needed for a decision on a request "to have land proclaimed a reservation," the Tribe did not need to submit a separate application.[76]  Rather, the Assistant Secretary stated: "Subject to the expiration of the 30-day notice period, and following the transfer of the property to trust status, I will issue a reservation proclamation."[77]

The State subsequently brought this suit, alleging one cause of action: that "[t]he Assistant Secretary's decision to accept land into trust on behalf of [Tlingit & Haida] and create Indian country in Alaska was arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and/or otherwise contrary to the law in violation of the [Administrative Procedure Act]."[78]  The State requests declaratory and injunctive relief, an order vacating the decision to grant Tlingit & Haida's application to take the Juneau parcel into trust and "any proclamation declaring the accepted parcel to be a reservation," and an order "[e]njoin[ing] the Defendants from accepting or considering requests to have lands in Alaska taken into trust or restricted status."[79]

---

[75] AR0000012.

[76] AR0000013.

[77] AR0000013.

[78] *See* Docket 1 at ¶¶ 52-53.

[79] Docket 1 at 24-25.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 19 of 39

The State subsequently moved for summary judgment, and Federal Defendants and Intervenor-Defendant Tlingit & Haida cross-moved for summary judgment.

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the [Administrative Procedure Act] of its own force may serve as a jurisdictional predicate."[80]

## LEGAL STANDARD

The State seeks judicial review under the Administrative Procedure Act ("APA").[81] Section 706 of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations."[82] Agency action is arbitrary and capricious if it:

> relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.[83]

---

[80] *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

[81] Docket 1 at ¶ 6.

[82] 5 U.S.C. § 706(2).

[83] *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018) (quoting *Greater*

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 20 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 20 of 39

By contrast, an agency action is proper if "the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made."[84]  "Whether agency action is 'not in accordance with law' is a question of statutory interpretation, rather than an assessment of reasonableness in the instant case."[85]

## DISCUSSION

The Court addresses (1) whether the major questions doctrine applies, (2) the Secretary's authority to take lands into trust in Alaska, (3) the Assistant Secretary's decision to take the Parcel into trust for Tlingit & Haida, and (4) the appropriate remedy.

### I.  Major Questions Doctrine

The major questions doctrine requires "Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'"[86]  In *West Virginia v. EPA*, the seminal case on the major questions doctrine, the Supreme Court held that in these "extraordinary cases," the agency "must point to 'clear congressional authorization' for the power it claims."[87]  The State contends

---

*Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1023 (9th Cir. 2011)).

[84] *Id.* (quoting *Greater Yellowstone Coal.*, 665 F.3d at 1023).

[85] *Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010) (citing *Nw. Env't Advocs. v. EPA*, 537 F.3d 1006, 1014 (9th Cir. 2008)).

[86] *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (citations omitted).

[87] 597 U.S. 697, 723 (2022) (quoting *Util. Air Regul. Grp.*, 573 U.S. at 324).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 21 of 39

that, post-ANCSA, whether to create more Indian country in Alaska—and, thereby, create more tribal territorial jurisdiction—"is of vast economic and political significance to the State" such that the major questions doctrine applies; hence the State asserts that clear congressional authorization is needed but that no such clear authority exists.[88]

The State's arguments are unavailing. First, even though the State maintains that "clear congressional authorization" is needed for the Secretary to take lands in Alaska into trust, the Court finds that Congress clearly gave the Secretary the authority for trust land acquisitions in Alaska in the plain language of the IRA and Alaska IRA, and nothing in ANCSA either explicitly or implicitly removed that authority.[89] Second, even if clear congressional authorization were lacking, the major questions doctrine is inapplicable. In the "extraordinary cases" that the Supreme Court held presented a major question, the authority claimed by the agencies had nationwide repercussions and, for certain agency decisions, entailed costs in the billions of dollars.[90] By contrast, this case involves the

---

[88] Docket 16 at 40, 45; Docket 25 at 11, 24-26.

[89] IRA § 5, which remains applicable to Alaska through Alaska IRA § 1, authorizes fee to trust land acquisitions.

[90] This Court has previously examined the Supreme Court's examples in *West Virginia* of such "extraordinary cases" in which it held that Congress had not "meant to confer the power the agency ha[d] asserted." *See Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, Case No. 3:20-cv-00195-SLG, 2023 WL 7282538, at *7-8 (D. Alaska Nov. 3, 2023) (citing *West Virginia*, 597 U.S. at 714, 721-22, 724). Most recently, in *Biden v. Nebraska*, the Supreme Court held that, under the major questions doctrine, the Secretary of Education could not "abolish $430 billion in student loans, completely canceling loan balances for 20 million borrowers," near the end of the COVID-19 pandemic, because "[a] decision of such magnitude and consequence on a matter of earnest and profound debate across the country must res[t] with Congress itself, or

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 22 of 39

Secretary's authority to take private land held in fee in Alaska that the fee owner seeks to voluntarily transfer to the federal government to be held in trust.[91]  While the Court agrees that the issue has considerable significance to many in the state of Alaska—especially in light of ANCSA, through which Congress "sought to end the sort of federal supervision over Indian affairs that had previously marked federal Indian policy"[92]—this case does not involve an agency's assertion of "sweeping authority,"[93] such as a statutory interpretation that would allow an agency to "substantially restructure the American energy market."[94]  Nor has any party alleged that it is a decision that would affect millions of Americans or implicate billions of dollars.[95]

---

an agency acting pursuant to a clear delegation from that representative body."  600 U.S. 477, 504 (2023) (second alteration in original) (internal quotation marks omitted) (quoting *West Virginia*, 597 U.S. at 735, 743).

[91] Alaska IRA § 2, which allowed the Secretary to designate certain public lands in Alaska as reservations, was repealed by FLPMA.  *See* discussion of relevant statutes *supra* Background Section I.

[92] *Venetie*, 522 U.S. at 523-24.

[93] *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 760 (2021) (per curiam).

[94] *West Virginia*, 597 U.S. at 724.

[95] *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022) (per curiam); *Nebraska*, 600 U.S. at 483; *West Virginia*, 597 U.S. at 714.

For the same reasons, the Court is also unpersuaded by the State's argument that the major questions doctrine applies because DOI has recently taken the new position that "4 to 6 million acres" in Alaska consisting of Alaska Native allotments and townsites now constitute Indian country with tribal territorial jurisdiction, which is contrary to DOI's long-held position that such allotments did not have tribal territorial jurisdiction.  *See* Docket 25 at 27-28; Docket 31-2 at 5; Docket 19 at 24.  While the Court finds troubling DOI's abrupt change of position during the pendency of this case—a position which, until this litigation, had remained the same since 1993—and DOI's conclusion that a still-valid district court opinion holding that Alaska Native

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 23 of 39

## II.     The Secretary's Authority to Take Land into Trust in Alaska

The Court next turns to the validity of the Secretary's claimed authority to accept land into trust in Alaska.  Given DOI's inconsistent views of its own authority to take land into trust in Alaska under the relevant statutes, the Court does not grant deference to its views and only accords them "the weight derived from their 'power to persuade.'"[96]  And while the State at oral argument asserted that, should the Court find the major questions doctrine to be inapplicable, the Court should still find that Alaska IRA § 1 was impliedly repealed, the Court declines to do so.[97]

---

allotments lack tribal territorial jurisdiction is wrong, that issue is not before the Court.  *See* Docket 30 at 2 & n.1; U.S. Dep't of the Interior, Opinion M-37079, *Partial Withdrawal of Solicitor's Opinion M-36975, Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers, and Clarification of Tribal Jurisdiction Over Alaska Native Allotments* (Feb. 1, 2024) (first citing U.S. Dep't of the Interior, Opinion M-36975, *Governmental Jurisdiction of Alaska Native Villages Over Land and Nonmembers* (Jan. 11, 1993), which can be found at AR0000927-1062; and then citing *Native Vill. of Eklutna v. U.S. Dep't of the Interior*, Case No. 19-cv-2388 (DLF), 2021 WL 4306110 (D.D.C. Sept. 22, 2021)) (other citations omitted), https://perma.cc/4Z3D-KHPY.

[96] *Akiachak*, 935 F. Supp. 2d at 204 (quoting *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1136 (D.C. Cir. 2001)). "Although '[t]he Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation,' the Supreme Court has held that 'the consistency of an agency's position is a factor in assessing the weight that position is due.'"  *Id.* (alteration in original) (first quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993); and then citing *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)). "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *Id.* (quoting *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987)).

[97] The State had originally asserted in its briefing that it was "not arguing that Congress implicitly repealed the Alaska IRA," but at oral argument, the State expressly stated that it was not waiving an implied repeal argument.  Docket 25 at 16; Docket 53 at 5 (Tr. Oral Arg.) (the State asserting that "if the Court disagrees with [the State] on the major questions doctrine then [the State] still think[s] [the Court] has to answer whether there was an implied repeal," and that "to be clear, the State is not waiving that argument [on implied repeal] at all").

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 24 of 39

"The cardinal rule is that repeals by implication are not favored."[98] There are two "well-settled" categories of repeals by implication: "(1) where provisions in the two acts are in irreconcilable conflict . . . ; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute."[99] "[I]n either case, the intention of the legislature to repeal must be clear and manifest . . . ."[100] "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective."[101]

As the *Akiachak* court explained when it addressed the State's implied repeal argument in that case, even though ANCSA "'sought to end the sort of federal supervision over Indian affairs that had previously marked federal Indian policy,' the terms of the settlement are 'capable of co-existence' with the power to take Alaska land into trust."[102] That is, Congress expressly stated that "*the*

---

[98] *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936).

[99] *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (quoting *Posadas*, 296 U.S. at 503).

[100] *Id.* (quoting *Posadas*, 296 U.S. at 503).

[101] *Id.* at 155 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

[102] *Akiachak*, 935 F. Supp. 2d at 204, 206-07 (first quoting *Venetie*, 522 U.S. at 523-24; and then quoting *Traynor*, 485 U.S. at 548). While *Akiachak* was vacated as moot, the Court may nevertheless consider it as "enlightening . . . commentary" or "persuasive arguments." *See Weisberg v. Webster*, 749 F.2d 864, 870 (D.C. Cir. 1984) (where case "ha[d] been vacated on mootness grounds" and thus was not binding, court could consider it as "enlightening authoritative commentary"); 13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.10.3 (3d ed. 2023) (noting that some courts treat cases that have been vacated as moot as "persuasive arguments," while other courts recognize that such vacated decisions have "as much precedential value as any other opinion in a living case, even though it may not be protected as 'stare decisis' in the sense that it is binding in later cases").

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 25 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 25 of 39

*settlement* [of aboriginal land claims] should be accomplished . . . without creating a reservation system or lengthy wardship or trusteeship," and that settlement was accomplished according to Congress' intent.[103]  ANCSA eliminated all existing reservations (save one), ended the Alaska Native allotment program going forward, and extinguished all aboriginal claims, but it did not end the discretionary authority that Congress had vested in the Secretary through the Alaska IRA to take private lands into trust in Alaska.[104]

And while Congress repealed Alaska IRA § 2 when it enacted FLPMA in 1976, five years after ANCSA—thereby taking away the Secretary's authority to set aside public lands in Alaska as reservations—it left in place Alaska IRA § 1, which gives the Secretary authority to take private lands into trust in Alaska.[105] Thus, as the *Akiachak* court pointed out, in construing ANCSA and Alaska IRA § 1 together, it is possible that the land claims were settled "while the Secretary retain[ed] the discretion—but not the obligation—to take additional lands (or, perhaps, those same transferred lands) into trust."[106]  "Although ANCSA instructed that 'the settlement should be accomplished . . . without creating a . . . lengthy . . . trusteeship,' the fact that the settlement would not create a trusteeship does not

---

[103] *See* 43 U.S.C. § 1601(a), (b) (emphasis added).

[104] *Id.* §§ 1603, 1617(a), 1618(a).

[105] *See* FLPMA § 704(a).

[106] *Akiachak*, 935 F. Supp. 2d at 207.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 26 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 26 of 39

necessarily mean that it prohibits the creation of any trusteeship outside of the settlement."[107]  Therefore, "[b]ecause it is possible to give effect to both ANCSA and the statute giving the Secretary land-into-trust authority in Alaska, it is the court's obligation to do so."[108]  This Court finds the *Akiachak* court's reasoning persuasive.

The Court further finds that ANCSA does not "cover[] the whole subject of the [Alaska IRA] and is [not] clearly intended as a substitute."[109]  ANCSA was enacted to settle land claims "by Natives and Native groups of Alaska, based on aboriginal land claims,"[110] while Alaska IRA § 1 extended the Secretary's authority over certain Indian affairs to Alaska, including taking lands into trust.[111]  These two subjects are "quite different" from each other.[112]  And while ANCSA dictated that "the settlement [of aboriginal land claims] should be accomplished . . . without

---

[107] *Id.* (quoting 43 U.S.C. § 1601(b)).

[108] *See id.*; *see also Radzanower*, 426 U.S. at 155 ("[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective.").

[109] *Radzanower*, 426 U.S. at 154 (citation omitted).  While DOI argues that ANCSA does not meet this second category of implied repeal, the State makes no argument on this point since it primarily relies on its major questions doctrine argument, originally stating in its briefing that it was "not arguing that Congress implicitly repealed the Alaska IRA."  *See* Docket 19 at 29-31; Docket 25 at 16.  Neither did the State make any arguments on this point during oral argument. *See generally* Docket 53 (Tr. Oral Arg.)

[110] 43 U.S.C. § 1601(a).

[111] The Alaska IRA was enacted to "extend certain provisions of the [IRA] . . . to the Territory of Alaska, to provide for the designation of Indian reservations in Alaska, and for other purposes." *See* Alaska IRA Statement of Purpose.  The IRA was enacted to "conserve and develop Indian lands and resources," among other things.  *See* IRA Statement of Purpose.

[112] *Radzanower*, 426 U.S. at 157.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 27 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 27 of 39

creating a . . . lengthy . . . trusteeship," it contains no further discussion of the authority to take lands into trust in Alaska.[113]   Thus, the Court finds that ANCSA does not "cover[] the whole subject" of Alaska IRA § 1, and that the intention of Congress to have ANCSA be a substitute for Alaska IRA § 1 is not "clear and manifest."[114]   Accordingly, the Courts finds that ANCSA did not impliedly repeal Alaska IRA § 1.

Nonetheless, the Court recognizes the "tension between ANCSA's elimination of most trust property in Alaska and the Secretary's authority to create new trust land."[115]   And, while not extensively briefed by the parties, the Court notes that the Assistant Secretary also stated in his decision that he would, after a 30-day notice period, proclaim Tlingit & Haida's fee to trust land as a reservation pursuant to IRA § 7.[116]   This is certainly another point of tension, especially since ANCSA explicitly revoked all reservations in Alaska except Metlakatla, and, as the Supreme Court noted about ANCSA, "[i]n no clearer fashion could Congress have departed from its traditional practice of setting aside Indian lands."[117]   However, the question of whether the Secretary has the authority to create reservations out

---

[113] 43 U.S.C. § 1601(b); *see generally id.* § 1601 *et seq.*

[114] *Radzanower*, 426 U.S. at 154 (citation omitted).

[115] *Akiachak*, 935 F. Supp. 2d at 207.

[116] AR0000012-13; *see also* Docket 16 at 37.  IRA § 7, which was extended to Alaska by Alaska IRA § 1, gives the Secretary the authority to create reservations out of trust lands.  IRA § 7 is codified at 25 U.S.C. § 5110.

[117] 43 U.S.C. § 1618(a); *Venetie*, 522 U.S. at 532 (citation omitted).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 28 of 39

of trust lands in Alaska is not before the Court today.

Thus, given that Congress has not repealed Alaska IRA § 1—even when it repealed the remainder of the Alaska IRA—and given that ANCSA and Alaska IRA § 1 are "capable of co-existence," the Court finds that the Secretary has the authority to take lands into trust in Alaska pursuant to IRA § 5, made applicable to Alaska through Alaska IRA § 1.[118]

## III. The Approval of Tlingit & Haida's Land into Trust Request

The Court now turns to the validity of the Assistant Secretary's approval of Tlingit & Haida's application to transfer land into trust. Although the State's arguments revolve primarily around the Secretary's overall lack of authority to take Alaska lands into trust, which the Court has rejected, the Court finds persuasive two issues raised by the State concerning the Assistant Secretary's decision in the instant case.

### a. Restoration of Indian Lands[119]

First, the Court finds problematic that the Assistant Secretary, in justifying his approval of Tlingit & Haida's application, stated that "[t]he anticipated benefits

---

[118] *See* FLPMA § 704(a); *Akiachak*, 935 F. Supp. 2d at 206 (citation omitted).

[119] Federal Defendants assert that the State waived any arguments alleging that the Assistant Secretary improperly exercised his discretion in considering the Tribe's traditional homelands when making the land into trust determination because the State failed to raise such claims in its opening brief. Docket 28 at 22-23. However, the State did raise this issue in both its fact and argument sections of its opening brief. *See* Docket 16 at 36-37, 43-44. Accordingly, the Court considers this issue.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 29 of 39

of acquiring the Parcel into trust include *restoration of Indian lands* . . . ."[120] The Assistant Secretary noted that Tlingit & Haida's "ancestors used areas in and around Southeast Alaska, including the area now known as Juneau, as their traditional and cultural homeland since time immemorial."[121] As the State points out, however, ANCSA extinguished "[a]ll aboriginal titles . . . and claims of aboriginal title in Alaska based on use and occupancy."[122]

To "restore" means "to give back ( . . . something that was lost or taken)" or "to return ( . . . something)."[123] Such a definition necessarily implies that an item given back or returned to someone rightly belongs to that person; *i.e.*, that the person holds title to that item. Thus, the Assistant Secretary's justification for accepting the Parcel into trust based on the "restoration of Indian lands" implies that he intended to return the Parcel to Tlingit & Haida based, apparently, on the Tribe's aboriginal title to the land. While Federal Defendants assert that the Assistant Secretary's actions cannot be viewed as relying on aboriginal title, the Court does not see what other right or title the Assistant Secretary was relying on or referring to.[124]

---

[120] AR0000012 (emphasis added).

[121] AR0000011.

[122] Docket 16 at 36-37, 43-44; 43 U.S.C. § 1603(b).

[123] *Restore*, The Britannica Dictionary, https://www.britannica.com/dictionary/restore (last visited Mar. 18, 2024).

[124] *See* Docket 19 at 26-27 & n.12; AR0000011.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 30 of 39

The Assistant Secretary's justification is misplaced, however, because the bargain struck through ANCSA extinguished all aboriginal titles "[i]n return . . . [for] the transfer of $962.5 million in state and federal funds and approximately 44 million acres of Alaska land to state-chartered private business corporations . . . ; [and] all of the shareholders of these corporations were required to be Alaska Natives."[125] Therefore, to the extent that the Assistant Secretary justifies taking Tlingit & Haida's land into trust based on the "restoration of Indian lands," the Court finds that specific justification to be arbitrary and capricious, because it relies on a factor—aboriginal title—that Congress had not intended the agency to consider by extinguishing such title through ANCSA.[126]

### b. Failure to Decide Tlingit & Haida's Eligibility Under IRA § 19 Definition of "Indian"

Second, the Court finds that the Assistant Secretary failed to properly examine whether Tlingit & Haida qualifies under IRA § 19's definition of "Indian," which is a prerequisite to his authority to take land into trust for the Tribe. IRA § 19 defines "Indian" to include (1) "all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction," (2) "all persons who

---

[125] *See* 43 U.S.C. § 1603(b); *Venetie*, 522 U.S. at 524 (citations omitted).

[126] *See Ctr. for Biological Diversity*, 900 F.3d at 1067 (citation omitted). The Court agrees with Federal Defendants that Tlingit & Haida's application to have the land acquired in trust does not constitute a "claim[] against the United States" pursuant to ANCSA, but the Court's discussion here is focused on the Assistant Secretary's apparent independent reliance on extinguished aboriginal rights, not on the State's argument regarding whether such an application constitutes a claim. *See* Docket 28 at 20-22; 43 U.S.C. § 1603(c).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 31 of 39

are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation," and (3) "all other persons of one-half or more Indian blood."[127]  Section 19 further provides that, "[f]or the purposes of this Act, Eskimos and other aboriginal peoples of Alaska shall be considered Indians."[128]  Section 19 then defines "tribe" as used in the IRA "to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation."[129]

In *Carcieri v. Salazar*, the Supreme Court held that the term "now under Federal jurisdiction" in the first definition "unambiguously refers to those tribes that were under the federal jurisdiction of the United States when the IRA was enacted in 1934."[130]  Following *Carcieri*, the Ninth Circuit in *County of Amador v. U.S. Department of the Interior* held that the terms "recognized" and "under Federal jurisdiction" are distinct; accordingly, the Ninth Circuit held that "a tribe qualifies to have land taken into trust for its benefit . . . if it (1) was 'under Federal jurisdiction' as of June 18, 1934, and (2) is 'recognized' at the time the decision is made to take land into trust."[131]

The State contends that the Assistant Secretary failed to determine whether

---

[127] IRA § 19 (codified at 25 U.S.C. § 5129).

[128] *Id.*

[129] *Id.*

[130] 555 U.S. 379, 395 (2009).

[131] 872 F.3d 1012, 1020 n.8, 1024 (9th Cir. 2017) (emphasis omitted).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 32 of 39

Tlingit & Haida qualifies under one of IRA § 19's three definitions of "Indian."[132] Federal Defendants, on the other hand, assert that § 19 "contains four definitions of 'Indian,' the last of which directs that '[f]or the purposes of [the IRA], Eskimos and other aboriginal peoples of Alaska shall be considered Indians.'"[133] Federal Defendants maintain that "the Alaska Definition is a standalone definition," which does not require Alaskan tribes to meet one of § 19's first three definitions.[134] Indeed, in his decision to accept land into trust for Tlingit & Haida, the Assistant Secretary concluded: "IRA Section 19, however, provides a standalone definition of 'Indian' applicable to Alaska Natives and Alaska Tribes, which eliminates any need to consider their eligibility under Section 19's other definitions of 'Indian,' including whether the Tribe was 'under Federal jurisdiction' in 1934."[135] Furthermore, Tlingit & Haida asserts that, "even if the Tribe needed to satisfy one of the first three definitions in section 19, it plainly does so," and that, pursuant to the first definition in § 19, "the undisputed record firmly establishes that the Tribe has been a 'recognized Indian tribe . . . under federal jurisdiction' since the 1867 Treaty of Cession with Russia."[136]

The Court finds that there is no standalone "Alaska Definition" contained

---

[132] Docket 25 at 40-41.

[133] Docket 28 at 26 (alterations in original) (quoting IRA § 19 (codified at 25 U.S.C. § 5129)).

[134] Docket 28 at 26.

[135] AR0000005-06 & n.31 (citing *Carcieri*, 555 U.S. 379).

[136] Docket 29 at 10-11.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 33 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 33 of 39

within IRA § 19; rather, the Court agrees with the State (and with DOI's initial view in 1937) that "the sentence clarifying that all aboriginal peoples in Alaska are considered 'Indian' 'should be read in conjunction' with the three criteria defining 'Indian,' otherwise 'there would be no law as to what persons of Indian blood were eligible for benefits and organization.'"[137]  This is clear from *Carcieri*, where the Supreme Court held that IRA § 19 "explicitly and comprehensively defined the term ["Indian"] by including *only three* discrete definitions," and it went on to list the three criteria from § 19.[138]  The Supreme Court did not hold that there was a separate, fourth definition of "Indian" that applied to the indigenous peoples of Alaska regardless of whether one of the first three criteria applied.  Instead, it emphasized that the "three discrete definitions" of the term "Indian" in § 19 were "comprehensive[]."[139]

The Supreme Court then noted in the next sentence that the Alaska IRA, enacted two years after the IRA, "expand[ed] the Secretary's authority to particular

---

[137] Docket 16 at 55 (quoting AR0003268, which is part of DOI Assistant Solicitors Felix Cohen, Kenneth Meiklejohn, and Charlotte Westwood's 1937 joint opinion concluding "that as a matter of construction and necessity the second reference to the term Indian [as related to the aboriginal peoples of Alaska] should be read in connection with the definition of the term").

[138] 555 U.S. at 391-92 (emphasis added) (citing IRA § 19).  Because DOI has again taken inconsistent positions regarding whether there is a standalone Alaska Definition within IRA § 19, the Court grants it no deference on this matter.  *See supra* note 96; AR0003266-69 (1937 Associate Solicitor Opinion concluding that § 19 requires Alaska Natives to meet one of the first three definitions); AR0000411-18 (2017 Solicitor Opinion concluding that there is a standalone Alaska Definition); AR0000213-15 (2021 Solicitor Opinion questioning the 2017 Solicitor Opinion analysis of IRA § 19 and the Alaska Definition and permanently withdrawing the 2017 opinion); AR0000056-67 (2022 Solicitor Opinion concluding that there is a standalone Alaska Definition).

[139] *Carcieri*, 555 U.S. at 391-92 (citing IRA § 19).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 34 of 39

Indian tribes not necessarily encompassed within the definitions of 'Indian' set forth in [IRA § 19]."[140]  To this statement the Supreme Court appended a footnote which states, "*See, e.g.*, 25 U.S.C. § [5119] ('Sections . . . [5108] . . . and [5129] of this title shall after May 1, 1936, apply to the Territory of Alaska') . . . ."[141]  While the Tribe asserts that this means the Secretary may "acquire land in trust for Alaska Natives pursuant to the Alaska IRA" without fitting "within one of the other definitions of 'Indian' in Section 19," the Court is not so convinced.[142]  The Court reads the Supreme Court's footnote as simply referencing the fact that the Alaska IRA extended the Secretary's trust land acquisition authority pursuant to IRA § 5 (codified at 25 U.S.C. § 5108) and the IRA § 19 definitional section (codified at 25 U.S.C. § 5129) to the Territory of Alaska.[143]  The Supreme Court did not further hold or comment that Alaska Natives need not fit into one of the three definitions of "Indian" in § 19.  Thus, while there may be a question as to whether Alaska tribes had to be "under Federal jurisdiction" in 1934 when the IRA was enacted or in 1936 when the Alaska IRA was enacted, the Court finds that there is no question that Alaska Native individuals must still meet one of the three definitions of "Indian"

---

[140] *Id.* at 392.

[141] The Supreme Court originally cited to 25 U.S.C. § 473a, which is an amended version of Alaska IRA § 1 and which has since been recodified at 25 U.S.C. § 5119.  *Id.* at 392 n.6.

[142] Docket 21 at 28 (citing *Carcieri*, 555 U.S. at 392 & n.6).

[143] *See Carcieri*, 555 U.S. at 392 n.6.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 35 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 35 of 39

pursuant to IRA § 19 to qualify for trust land transfers.[144]

Although Tlingit & Haida maintains that "the undisputed record firmly establishes" that it meets the first definition under § 19 because it "has been a 'recognized Indian tribe . . . under federal jurisdiction' since the 1867 Treaty of Cession with Russia,"[145] the Assistant Secretary did not make any findings or decisions related to whether the Tribe meets one of the § 19 definitions. The Court finds that factual and legal issues remain on this topic, such as whether Tlingit & Haida was a tribe "under Federal jurisdiction" pursuant to *Carcieri*, and whether the relevant date for being "under Federal jurisdiction" is 1934 or 1936.[146] Because

---

[144] In addition, the Court finds persuasive the State's argument that a standalone "Alaska Definition" would mean "any person of indigenous descent in Alaska, no matter the percentage of 'Indian blood,' is entitled to the benefits of the IRA," whereas Native Americans in the Lower 48 would still have to meet the IRA's requirement of being "one-half or more Indian blood" in order to have the Secretary accept land into trust. *See* Docket 25 at 37-39. The Court agrees that this would make little sense.

[145] Docket 29 at 10-11.

[146] The Court notes that, in 1935, Congress enacted an act authorizing "the Tlingit and Haida Indians of Alaska to bring suit in the United States Court of Claims . . . [for] claims . . . against the United States." Act of June 19, 1935, Pub. L. No. 74-152, 49 Stat. 388, 388 [hereinafter "Act of 1935"]. In a subsequent suit, the Court of Claims held that the Tlingit and Haida Indians could bring claims against the United States, even though the Act of 1935 "refer[red] to 'lands or other tribal or community property rights' and neither the Tlingit nor Haida Indians were organized politically as tribes for the purpose of owning land or for any other purpose." *Tlingit & Haida Indians of Alaska v. United States*, 177 F. Supp. 452, 461, 463 (Ct. Cl. 1959) (quoting Act of 1935, § 2). Therefore, given that court's determination that, at least as of 1935, Tlingit and Haida Indians were not "organized politically as tribes for the purpose of owning land or for any other purpose," another question the Assistant Secretary may need to address is whether Tlingit & Haida qualifies as a "*tribe* now under federal jurisdiction" for purposes of the IRA, which defines "tribe" as "any Indian tribe, organized band, pueblo, or the Indians residing on one reservation." *See Tlingit & Haida*, 177 F. Supp. at 461; IRA § 19 (emphasis added).

The Court also notes that the Ninth Circuit has held that, through the 1867 Treaty of Cession with Russia, Alaska Natives came "under the guardianship of the federal government and [were] entitled to the benefits of the special relationship." *Alaska Chapter, Associated Gen. Contractors of Am., Inc. v. Pierce*, 694 F.2d 1162, 1168 n.10 (9th Cir. 1982) (citations omitted).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 36 of 39

the Assistant Secretary expressly noted that he did not consider whether Tlingit & Haida met one of the three definitions in § 19, the Court finds this lack of consideration contrary to the law as it was based on an impermissible construction of the statute.[147]

## IV. The Appropriate Remedy

At oral argument, the State and DOI agreed that, should the Court find there is no standalone "Alaska Definition" within IRA § 19, the appropriate remedy would be to remand to the agency for a determination in the first instance.[148] Tlingit & Haida, however, maintained that the Court has enough evidence from the administrative record to make a determination as a matter of law.[149] As discussed in the previous section, the Court finds that the agency erred when it relied on aboriginal title as justification to take the Parcel into trust and that both factual and legal issues remain as to whether the Tribe meets one of the § 19 definitions. The Court finds that these issues should first be passed upon by the agency.

---

*See also* Jon W. Katchen & Nicholas Ostrovsky, *Strangers in Their Own Land: A Survey of the Status of the Alaska Native People from the Russian Occupation Through the Turn of the Twentieth Century*, 39 Alaska L. Rev. 1 (2022) (discussing the history of the United States' relationship with Alaska Natives).

[147] *See* AR0000006 n.31.

[148] *See* Docket 53 at 5-7, 16 (Tr. Oral Arg.).

[149] *See* Docket 53 at 29 (Tr. Oral Arg.). In support of the proposition that the Court may make a determination based on the record without first having an agency decision to review, Tlingit & Haida cited to *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090 (9th Cir. 2014). Docket 53 at 30 (Tr. Oral Arg.). In *Treichler*, however, the court had "additional flexibility" to "modify an administrative decision without remanding the case for further proceedings" pursuant to a Social Security-specific statute. 775 F.3d at 1099-1100 (citing 42 U.S.C. § 405(g)).

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 37 of 39

As to vacatur, the Ninth Circuit has held that remand without vacatur should be ordered only in "limited circumstances" where "equity demands" doing so.[150] "When determining whether to leave an agency action in place on remand, [a court] weigh[s] the seriousness of the agency's errors against 'the disruptive consequences of an interim change that may itself be changed.'"[151]  The parties provided no input on whether vacatur would be appropriate should the Court remand to the agency for further action.  The Court finds that this is not a case where leaving the agency action in place is demanded by equity.[152]  The 787-square-foot parcel of land at issue has been and will continue to be used as an overflow parking lot for Tlingit & Haida's employees and guests.[153]  Vacatur would only change the status of the land—whether it is held in fee simple by Tlingit & Haida or held in trust by the federal government.  While the Court recognizes that the status of the land affects jurisdiction and the availability of certain programming and funding, the Court finds that such consequences are not so disruptive as to warrant leaving the Assistant Secretary's decision in place.  Accordingly, the Court remands with vacatur.

---

[150] *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (citations omitted).

[151] *Id.* (citation omitted); *see also Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).

[152] *Cf. Pollinator Stewardship*, 806 F.3d at 532 (collecting cases where courts chose to remand without vacatur because vacatur would, for example, risk potential extinction of snails or lead to air pollution).

[153] AR0000004, AR0000006.

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 38 of 39

**CONCLUSION**

In light of the foregoing, IT IS ORDERED that the State's Motion for Summary Judgment at Docket 16 is GRANTED in part and DENIED in part; Federal Defendants' Cross-Motion for Summary Judgment at Docket 19 is GRANTED in part and DENIED in part; and Tlingit & Haida's Cross-Motion for Summary Judgment at Docket 21 is GRANTED in part and DENIED in part, as follows:

The Secretary retains the authority to take land into trust in Alaska pursuant to IRA § 5, codified at 25 U.S.C. § 5108. To the extent that the Assistant Secretary justifies taking Tlingit & Haida's land into trust based on the "restoration of Indian lands," the Court finds that specific justification to be arbitrary and capricious. The Court further finds that the Assistant Secretary's conclusion that IRA § 19, codified at 25 U.S.C. § 5129, contains a standalone Alaska Definition which allows him to take land into trust for Alaska Natives without finding one of the three definitions within IRA § 19 to be met is contrary to the law. Accordingly, the Court VACATES the agency decision and REMANDS to the agency for further proceedings consistent with this order.

The Clerk of Court shall enter a final judgment accordingly.

DATED this 26th day of June 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cv-00007-SLG, *State of Alaska v. Newland, et al.*
Order re Motions for Summary Judgment
Page 39 of 39

Case 3:23-cv-00007-SLG   Document 54   Filed 06/26/24   Page 39 of 39